MARY LOU SORENSON, appellee, v. EARL J. SORENSON, appellant.

No. 50845.

(Reported in 119 N.W.2d 129)

January 15, 1963.

Baird & Baird, of Council Bluffs, for appellant.

William O. Lewis, of Harlan, for appellee.

MOORE, J.—The parties herein were married on October 29, 1945, and lived together as husband and wife until May 13, 1954. On May 27, 1954, they entered into the following agreement:

"This agreement made and entered into this 27th day of May, 1954, by and between Mary Lou Sorenson and Earl J. Sorenson.

"Whereas, the parties hereto are husband and wife and have two children, named Patricia L. Sorenson and Michael M. Sorenson, and

"Whereas, Mary Lou Sorenson contemplates filing suit for divorce.

"Now therefore, it is mutually agreed as follows:

"1. Out of the jointly owned property owned by the parties hereto, it is agreed that Earl J. Sorenson shall have the automobile and the jeep as his separate property. Mary Lou Sorenson shall have one half of the dishes and one half of the linens and clothing for herself and the children. The balance of the household goods will be sold and used to pay off joint indebtedness.

"2. It is agreed that Mary Lou Sorenson shall have absolute care and custody of the children, Patricia L. and Michael M. Sorenson, subject to the rights of visitation hereinafter set out.

"3. Earl J. Sorenson agrees to pay $50 per month for the care and support of both children. Earl J. Sorenson agrees to pay one half of the cost of obtaining a divorce.

"4. It is agreed that Earl J. Sorenson will have rights of reasonable visitation with the children at all times and will be entitled to have the children with him for one week during each summer, and to have them for weekends when agreeable to the parties hereto.

"In witness whereof, the parties hereto have signed their names this 27th day of May, 1954.

WITNESS:                   (s) Mary Lou Sorenson

(s) William O. Lewis       (s) Earl J. Sorenson"

On November 3, 1954, plaintiff obtained a decree of divorce on grounds of cruel and inhuman treatment which was approved as to form by G. O. Hurley, defendant's attorney. The decree makes the May 27 agreement a part thereof and includes orders as to custody, visitations and child support in accordance therewith.

This is an action by plaintiff to modify the child support and visitation terms of the decree and seeking to impress a trust on certain property inherited by defendant. In her application filed June 9, 1960, plaintiff alleged defendant's earnings had greatly increased since the decree and defendant was about to receive two thirds of his mother's estate, estimated at $49,430.30, which was then being probated. She also stated the requirements of Patricia and Michael, then ages 11 and 9 years, for support and maintenance had greatly increased. She asked the child support be increased to $90 per month and that a trust be impressed on defendant's property to enforce payment of child support due under the provisions of the decree none of which had been paid.

On September 10, 1960, defendant filed his answer and resistance pleading substantially the same defense as set out in his amended and substituted answer and resistance. On March 31, 1961, defendant filed amended and substituted answer and resistance to application in which he requested in separate divisions the stipulation and decree be modified in respect to paternity and child support. He claimed plaintiff fraudulently obtained the stipulation and decree, was estopped from collecting past or future child support, by agreement had waived child support provisions, and he had no duty to support said children.

The trial started on March 31, and therefore plaintiff was given time to file motions and her reply. Thereafter she filed a motion to strike all allegations in regard to the paternity of the two children contained in the amended and substituted answer

of defendant upon the grounds that said matter was res judicata, that defendant by signing the property settlement and stipulation assumed the responsibility for the support of said children and was estopped from denying their paternity.

The motion to strike was taken with the submission of the issues raised by the pleadings, including plaintiff's reply in which she denied defendant's allegations.

In the findings, conclusions and decree the trial court found: (1) The issue of paternity of the two children was res judicata as to defendant and the original decree was binding upon him in this respect, (2) there was no fraud or deceit on plaintiff's part in the matter of execution of the stipulation, (3) defendant was the children's father, (4) there was no agreement or conduct on plaintiff's part waiving child support, and (5) because of substantial change of circumstances arising since entry of the original decree the child support payments should be increased to $70 per month. Plaintiff's request to establish a trust was denied.

Defendant relies on three propositions for reversal. (1) The evidence clearly discloses he is not the father of the children. (2) Defendant proved fraud and deceit by plaintiff justifying the vacating and setting aside of the stipulation and decree. (3) The evidence established a binding oral contract between the parties to release defendant from child support payments.

I. We consider first the question of defendant's claim the stipulation and terms of the original decree establishing paternity should be set aside or modified because of fraud and deceit.

On direct examination defendant testified:

"I have lived in Council Bluffs going on three years. At all times since I moved to Council Bluffs I have had a telephone, and my name has been in the telephone directory. After the divorce, until 1958 I lived on my mother's farm near Harlan; and moved from there to Council Bluffs. I have never been in California since the divorce and have been in the State of Iowa all the time. Within two or three weeks after the date of the decree I had a conversation with my former wife, now Mrs. Huffman.

Up to that time I had not seen the children. * * * On the way down to Omaha I saw her on the street in Council Bluffs and I stopped and talked to her and asked her about visiting the children and she said no and I said well I had my rights by decree that I should visit the children and she said well she didn't want me to visit the children and I said if that was the case I was going to try to get custody of the children and she said well you don't need to bother. Them ain't your children anyhow. You're not the father. * * * I have not ever paid any support money. At that time also she told me she was going to marry Mr. Huffman and he would support the children and that she did not need any of my help. In relation to visiting the children, she said it would cause trouble and she did not want me to visit them. The last and only time that I have seen the children since the divorce was at my mother's funeral and I didn't get to talk to them. * * * I haven't seen my former wife since the divorce and she hasn't phoned me. On one occasion when the children were to visit my mother, I was asked to leave because of instructions that my former wife had left with Ed Christensen and I did not get to see the children. I have been examined by Dr. Joseph Spearing to determine whether I could be the father of children. Neither my former wife nor Mr. Huffman have ever made any demand upon me for assistance in taking care of the children. At no time did my mother ever mention receiving a letter from my former wife relating to one of the children needing glasses."

On cross-examination defendant testified:

"During my marriage with Mary Lou, I had normal sex relations with her and these continued up to the time of our separation sometime in '54.

"After my divorce I lived at my mother's and was home every night. She gave me some financial help, as she had done through my married life. Through the years of marriage I thought I was the father of the children. * * *

"I was never examined as to my sterility prior to October 25, 1960, and have not been examined by other doctors."

Having testified in her case in chief regarding the change

we are next compelled to say that we think that decision sound and in line with the better reasoning on the proper construction of our Workmen's Compensation statute. The cross-petition is not based on a claim of negligence of the employer which injured the employee, but upon a breach of an implied contract to do the work safely. Nor do we see any language in the statute which compels a holding that it was intended in any way to limit or take away the rights of third parties. As the Minnesota court said, the third party has gained nothing by the statute, and should not be deprived of a right otherwise held at common law. An intention of the legislature, in enacting a statute for the regulation of rights between the employer and employee, to destroy the rights of third parties should at the very least be clearly expressed. There is no such expression here.

The defendant to cross-petition, Langley, cites and relies upon Fidelity & Casualty Co. v. Cedar Valley Electric Co., 187 Iowa 1014, 174 N.W. 709. This case was distinguished by the Circuit Court of Appeals in the Kittleson case, loc. cit. 179 F.2d 955. The employer there was bringing his action as a subrogee to the rights of the employee, and as though the employee or his personal representative had brought it. So any negligence of the employer contributing to the injuries would be immaterial, granted that there was shown some negligence of the third party which was a proximate cause of such injuries. The employer stands in the shoes of the injured employee for the purposes of such an action, and brings it, in part at least, for the employee's benefit.

The ruling and judgment of the trial court is reversed and the cause remanded for further proceedings.—Reversed and remanded.

All JUSTICES concur.