Justine Wise Polier, J.
The petitioner and the respondent were married on December 23, 1957 and one child was bom on November 22, 1961. Subsequently, in April, 1965 the parties entered into a separation agreement which provided for support of the petitioner and the child, for custody to the petitioner, and for visitation by the respondent. In June, 1965 the respondent obtained a divorce in Mexico which incorporated but did not merge the .separation agreement.
The present action was brought to enforce the support provisions of the separation agreement incorporated in the judgment of divorce. Following the entry of a temporary order for $80 weekly and a series of adjournments, the respondent now seeks to question the paternity of the child bom during the marriage and applies for a blood-grouping test.
The respondent, having sought the jurisdiction of the Mexican court and reaped the benefit from the judgment so .secured, is estopped from now seeking to have this court annul or amend the judgment or the separation agreement on which the foreign court relied in issing the judgment of divorce. (See Fink v. Goldblatt, 18 A D 2d 629, affd. 13 N Y 2d 957.) “ The Mexican *913 decree approves and incorporates the separation agreement and orders the parties to comply with it. As the validity of the decree is in no wise questioned, its consequent recognition by our courts (see Gould v. Gould, 235 N. Y. 14, 28, 29) precludes the impairment of its mandate which the requested annulment of the agreement would entail (Rehill v. Rehill, 306 N. Y. 126; Schacht v. Schacht, 295 N. Y. 439; Calderon v. Calderon, 275 App. Div. 251; Hoyt v. Hoyt, 265 App. Div. 223).” In Harges v. Harges (46 Misc 2d 994) the court dismissed an action by a wife to set aside a Mexican decree of divorce procured by the husband which incorporated a preceding separation agreement. The court stated (p. 1002): “ By that incorporation the Mexican court determined the validity of the agreement. The agreement may not be set aside, therefore, unless the decree is invalidated ”. The court (pp. 996-997) quoted Weiner v. Weiner (13 A D 2d 937): “ A spouse who by acts indicates acquiescence in the divorce and so induces the other spouse to act upon the assured validity of the.decree cannot be heard to contest it.” In the instant case where the respondent initiated and secured the divorce and there is no challenge of its validity, he is clearly estopped from contesting selected parts of the decree, on which petitioner has relied, in an action to enforce the separation agreement, as incorporated in that decree, under the limited powers given to this court under subdivision (c) of section 466 of the Family Court Act.
Even if the limited powers conferred under subdivision (c) of section 466 of the Family Court Act permitted this court to consider review of the separation agreement and Mexican decree, the application for a blood-grouping test of the child born in 1961 during the marriage would have to be denied.
The development of the blood-grouping test has caused the courts to authorize its use in some cases to rebut the legitimacy of a child born during a marriage. Examination of the decisions, however, shows that the courts have not done so except in unusual situations. In Kwartler v. Kwartler (291 N. Y. 689) the court certified an answer that the Supreme Court has the power to direct a blood-grouping test under section 306-a of the Civil Practice Act. In that case the plaintiff had alleged in a divorce action that the defendant had given birth to a child approximately 22 months after the separation of the parties. In Anonymous v. Anonymous (1 A D 2d 312) on which the respondent relies heavily, the husband alleged that the wife had been living with a married corespondent in adulterous intercourse since a year before the birth of twins whose paternity he denied, and that she had admitted that the core *914 spondent was the father. In granting the motion for the blood-grouping tests, the court found that the application for them ‘1 may be justified in view of the contents of the correspondence * * * which, in our opinion, indicate the existence of a meretricious relationship between plaintiff and the corespondent over a long period of time including the period of gestation.” (p. 315).
In Beach v. Beach (114 F. 2d 479) the court allowed a blood-grouping test where the husband denied paternity of an unborn child in an action for maintenance and counterclaimed for divorce on the ground of adultery. The court in doing so stated (anonymous, p. 318): “ While we do not hold that blood grouping tests should be granted on an application of an alleged father, based on mere suspicion, we are of the opinion that the unusual circumstances presented in the case at bar warrant the granting of this application.”
The courts, while recognizing that even the strong presumption of legitimacy of a child born during a marriage is rebuttable, have been careful to protect children against any abuse of blood-grouping tests for ulterior motives. Thus, in Hill v. Hill (20 A D 2d 923) the court denied the application for a blood-grouping test by a defendant wife in a divorce action. The court found that for six years the wife had concealed the true paternity from her husband with whom she had continued to live, that her husband had supported the child and still claimed to be the father. In denying the application, the court held that public policy and the overriding consideration of the child barred a wife from bastardizing her child by confessing adultery for the purpose of securing the child’s custody.
The child in the instant case, now nearing eight years of age, was almost four years of age when the parties entered into a separation agreement. The respondent undertook to support the child and asserted his right to visit, which he exercised with regularity even after his second marriage. The respondent has held himself out as the father of this child and is regarded by the child and the outside world as the father. The question of the child’s paternity was not raised until after the mother instituted the petition in this court to enforce the support provisions of the separation agreement. To grant the request for a blood-grouping test on this record would open the door to unwarranted challenges of paternity and thus undermine the security of children whose parents become antagonists bent on harassing one another.
In the instant case, this court finds that, even if it had the power to go behind the separation agreement and the judgment of *915 divorce, to grant a motion for a blood-grouping test would violate public policy and work irreparable harm on the child.
The application for blood-grouping test is denied. Adjourned to June 25,1969 for hearing on question of final order.