AMELIA GAIL WILLIAMS v. CONRAD E. HOLLAND

No. 788DC98

(Filed 19 December 1978)

1. **Evidence § 51; Parent and Child § 1.2— blood-grouping test—issue of paternity required**

     Before a court is required to order a blood-grouping test in a civil action, the question of paternity must arise. G.S. 8-50.1.

2. **Constitutional Law § 26.5; Divorce and Alimony § 23— foreign judgment determining paternity—in personam jurisdiction—full faith and credit**

     In an action to recover arrearages for child support which had been ordered by a Nevada court in a divorce action instituted by plaintiff, defendant was barred by *res judicata* from raising the issue of paternity, since he had properly authorized an attorney to enter a general appearance for him in the Nevada proceeding, which the attorney did; the Nevada court therefore had jurisdiction over the person of defendant; and the adjudication of paternity in plaintiff's Nevada divorce action was entitled to full faith and credit in the courts of this State.

ON writ of certiorari to review order entered by *Jones, Judge.* Order entered 5 December 1977 in District Court, WAYNE County. Heard in the Court of Appeals 25 October 1978.

This action was initiated by plaintiff on 6 September 1977 when she filed a complaint in District Court alleging: (1) defendant is a resident of North Carolina; (2) plaintiff and defendant were married in 1965 and subsequently were granted a divorce in Nevada on 26 September 1972; (3) one child was born of the parties' marriage; (4) in its divorce decree, the Nevada court ordered defendant to make certain payments for support of the parties' child; and (5) defendant had failed to meet those child support obligations and substantial arrearages had accrued. Plaintiff's prayer for relief sought to have the court order defendant to pay all arrearages and counsel fees incurred by plaintiff in this action. Plaintiff also petitioned the court for modification of the Nevada decree to provide for increased child support payments, alleging that a material change in circumstances had occurred since the Nevada decree had been entered.

On 22 November 1977 defendant filed a motion in which he denied paternity of the child and requested that the court order plaintiff to submit both herself and the child for blood-grouping tests as provided for by G.S. 8-50.1. On 28 November 1977 plaintiff filed a response contending defendant's request for blood-grouping tests was barred by *res judicata* and estoppel. She also requested that the court strike certain portions of defendant's motion from the record. In support of her *res judicata* and estoppel contentions, plaintiff filed an affidavit showing that defendant had filed an answer in the 1972 Nevada divorce proceeding admitting he was the father of the child and subsequently had made substantial child support payments pursuant to the divorce decree. Attached to plaintiff's affidavit was a certified copy of the proceedings in the Nevada divorce action, including the judgment of the court decreeing "that the care, custody, and control of the one minor child born the issue of this marriage, namely: Joelle, born January 4, 1971, be awarded unto the plaintiff herein. . . ."

A hearing was held on 28 November 1977 at which time defendant submitted an affidavit of John Sallstrom, a certified physician's assistant, supporting his contention that blood-grouping tests would show defendant could not possibly be the father of the child. Plaintiff objected to the court's consideration of the affidavit and moved to have it struck from the record. After considering the various motions and documents submitted by the parties, the court ruled that defendant's motion was made

upon good cause and ordered that plaintiff and the child submit to such tests. The court also granted plaintiff's motion to strike the physician's assistant's affidavit and certain portions of defendant's motion.

Plaintiff sought to appeal from this interlocutory order on grounds that it affected a substantial right and was therefore appealable under G.S. 7A-27(d)(1). Plaintiff also filed a petition for a writ of certiorari with this court, which we allowed on 1 February 1978. Defendant cross-assigned error to that part of the court's order striking portions of his motion and Sallstrom's affidavit.

*Dees, Dees, Smith, Powell & Jarrett, by Tommy W. Jarrett for plaintiff.*

*Barnes, Braswell & Haithcock, by W. Timothy Haithcock for defendant.*

BROCK, Chief Judge.

[1] General Statute No. 8-50.1 provides that, "[i]n the trial of any civil action, the court before whom the matter may be brought, upon motion of either party, shall direct and order that the defendant, the plaintiff, the mother and the child shall submit to a blood-grouping test; provided. . . ." In *Wright v. Wright,* 281 N.C. 159, 188 S.E. 2d 317 (1972), the court held that this portion of the statute, applicable to civil actions only, is qualified by certain language found in that portion of the statute dealing separately with criminal proceedings. The portion of the statute dealing with criminal proceedings provides, "[i]n the trial of any criminal action or proceedings . . . *in which the question of paternity arises,* . . . the court before whom the matter may be brought, . . . shall direct and order that the defendant, the mother and the child shall submit to a blood-grouping test; provided. . . ." That the italicized portion of the criminal proceedings section of the statute applies as well to the civil proceedings section of the statute was the holding in *Wright.* Thus, before a court is required to order a blood-grouping test in a civil action, the question of paternity must arise. If defendant in this case is barred by *res judicata* or estoppel from raising the issue of paternity as plaintiff contends, the statutorily imposed obligation of the court to order that the parties submit to blood-grouping tests never arose, and it was error for the court to enter such order.

Williams v. Holland

[2] The parties bring to our attention two cases that have considered the initial question of whether the issue of paternity can be raised by a party to a civil action. In Wright, *supra,* an action brought by the wife for custody and support of the parties' minor children, the husband filed an answer admitting a particular child was born of the parties' marriage and that he owed a duty of support to the child. Subsequently, however, the husband made a motion for a blood-grouping test, which the court granted. When the results of the tests indicated the husband was excluded as the father of the child, the court granted the husband's motion to amend his answer by deleting his admissions of paternity. On appeal the wife contended on the basis of the husband's admissions in his original answer and his previous conduct acknowledging paternity of the child that he should be estopped from raising the issue of paternity. Although acknowledging that "[i]t may be that the putative father of a child conceived or born during wedlock should be estopped to raise the issue of paternity unless he does so within a fixed time," the court rejected the wife's contention on grounds that such a result must be effected by legislative action. *Id.* at 172, 188 S.E. 2d at 326.

*Brondum v. Cox,* 30 N.C. App. 35, 226 S.E. 2d 193 (1976), affirmed, 292 N.C. 192, 232 S.E. 2d 687 (1977), presented substantially the same issue raised in this appeal. In that case, plaintiff-wife brought an action under the Uniform Reciprocal Enforcement of Support Act to obtain an order requiring her ex-husband to support her child. Plaintiff-wife's action was based on the provisions of a Hawaiian divorce decree obtained by her in a proceeding in which her ex-husband made no appearance, although the Hawaii court attempted to exercise personal jurisdiction over him by serving the summons, complaint, and other papers on him by mail in North Carolina, where he was domiciled at the time. Defendant-husband filed an answer to plaintiff-wife's enforcement action denying he was the father of the child and requesting an order for a blood-grouping test. The District Court entered an order finding the Hawaii court had only *in rem* jurisdiction to enter the divorce, child custody, and child support decrees. The court ruled, however, that because the issue of paternity was inextricably bound up in the determination of the above matters, the finding of paternity by the Hawaii court was conclusive and the issue could not be relitigated by defendant-husband in

plaintiff-wife's enforcement action. From the denial of his motion, defendant-husband appealed to the Court of Appeals, which reversed the judgment of the District Court in an opinion subsequently affirmed by the Supreme Court. The reversal by the appellate court was based on the conclusion that a judgment establishing the status of paternity is one *in personam* and can be rendered only by a court having jurisdiction over the person of the defendant, which the Hawaii court did not have in plaintiff-wife's divorce action. Therefore, the courts of North Carolina were not required to accord full faith and credit to that part of the Hawaiian judgment finding defendant-husband to be the father of plaintiff-wife's child, and defendant-husband was entitled to raise the issue of paternity in plaintiff-wife's enforcement action.

We think the court's holding in *Wright* applies only to the estoppel contentions raised by plaintiff. The factual basis of plaintiff's contention that defendant should be estopped from denying paternity because of a past history of both formal and informal acknowledgment of paternity of the child is substantially the same as that shown in *Wright.* We agree with the Supreme Court's suggestion that, ". . . the putative father of a child conceived or born during wedlock should [perhaps] be estopped to raise the issue of paternity unless he does so within a fixed time." But we also realize that ". . . is a matter for consideration by the General Assembly." Wright, *supra*, at 172, 188 S.E. 2d at 326.

*Brondum*, however, is distinguishable from the case under consideration and offers considerable support, albeit in *dictum*, for the disposition we make of this case. The critical, underlying basis for the court's decision in *Brondum* that the adjudication of paternity in the wife's Hawaiian divorce action was not entitled to full faith and credit in the courts of this state was the fact that the Hawaiian court did not have *in personam* jurisdiction over defendant-husband when it granted plaintiff-wife a divorce and adjudicated the issue of paternity. *See Survey of Developments in North Carolina Law, 1977, Civil Procedure,* 56 N.C.L. Rev. 874-76 (1978). In this instance, the Nevada court, which granted plaintiff a divorce, awarded her child custody and support, and decreed the child, Joelle, to be a child born of the marriage, did have jurisdiction over the person of defendant. Among the documents relating to the Nevada proceeding that plaintiff sub-

mitted to the District Court was a power of attorney properly executed by defendant authorizing a Nevada attorney or his designate to "enter my appearance and represent me in said action at any time after the Complaint is filed to the same extent as if I were personally present. . . ." The record further shows that the attorney so authorized filed an answer on defendant's behalf in which it was admitted that the child, Joelle, was born the issue of the marriage.

"While it is true that no consent can give a court jurisdiction of the subject matter of an action which the court does not possess without such consent, it is equally true that a court may obtain jurisdiction over the person of a party litigant by his consent." *Jones v. Brinson,* 238 N.C. 506, 509, 78 S.E. 2d 334, 337 (1953). It is also uniformly held that a general appearance by a defendant in a civil suit is sufficient to confer jurisdiction over his person on the court before which he appears. *In re Blalock,* 233 N.C. 493, 64 S.E. 2d 848 (1951). And a defendant may appear either himself or he may authorize another to appear for him. 5 Am. Jur. 2d, Appearance, § 10, p. 487. In view of the fact that defendant properly authorized an attorney to enter a general appearance for him in the Nevada divorce proceeding and the attorney so authorized filed an answer to plaintiff's complaint in that action, it is clear that the Nevada court had jurisdiction over the person of defendant. Defendant is therefore bound by any order of the Nevada court requiring the assertion of *in personam* jurisdiction.

"The constitutional command of full faith and credit, as implemented by Congress, requires that 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.' Full faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed. 2d 186, 190 (1963). And in *Sears v. Sears,* 253 N.C. 415, 417, 117 S.E. 2d 7, 9 (1960) our Court noted, "[t]he rule in North Carolina is that a divorce decree rendered in a sister state which is valid and entitled to recognition under the Full Faith and Credit Clause of the United States Constitution, Art. IV, Sec. 1, is *res judicata* as to all matters in issue and deter-

mined, and a bar to a subsequent suit for the same relief." *See also Garner v. Garner*, 268 N.C. 664, 151 S.E. 2d 553 (1966); *Laughridge v. Lovejoy*, 234 N.C. 663, 68 S.E. 2d 403 (1951); 3 Nelson, *Divorce and Annulment*, § 33.39, pp. 508-9, (2d ed. 1945); Wurfel, *Recognition of Foreign Judgments*, 50 N.C.L. Rev. 21 (1971).

We have not found a decision of the Nevada courts on the question of the *res judicata* effect of a determination of paternity in a divorce action. We are confident, however, that our application of the principles of *res judicata* to this case meets the constitutional requirement that the courts of this state accord to the judgment of a sister state *at least* the *res judicata* effect which the judgment would be accorded in the sister state rendering it. *See Durfee v. Duke, supra.*

That a judgment rendered by a court having jurisdiction to do so finding paternity to exist bars the relitigation of that issue by the parties to the original judgment is a well established rule of law in other jurisdictions that have considered the question. *Adoption of Stroope*, 232 Cal. App. 2d 581, 43 Cal. Rptr. 40 (1965); *Peck v. Superior Court*, 185 Cal. App. 2d 573, 8 Cal. Rptr. 561 (1960); *Peercy v. Peercy*, 154 Colo. 575, 392 P. 2d 609 (1964); *Sorenson v. Sorenson*, 254 Ia. 817, 119 N.W. 2d 129 (1963); *Dornfeld v. Dornfeld*, 200 App. Div. 38, 192 N.Y.S. 497 (1922); *Time v. Time*, 59 Misc. 2d 912, 300 N.Y.S. 2d 924 (1969); *Arnold v. Arnold*, 207 Okla. 352, 249 P. 2d 734 (1952); *Byrd v. Travellers Insurance Co.*, 275 S.W. 2d 861 (Tex. Civ. App. 1955); *Johns v. Johns*, 64 Wash. 2d 696, 393 P. 2d 948 (1964); *E_____ v. E_____*, 57 Wis. 2d 436, 204 N.W. 2d 503 (1973); *Limberg v. Limberg*, 10 Wis. 2d 63, 102 N.W. 2d 103 (1960). For a discussion of these and other cases that have considered this question, *see Annot.*, 65 A.L.R. 2d, 1381, pp. 1395-96.

*E_____ v. E_____, supra*, is illustrative of the approach taken by most jurisdictions on this issue. In that case the wife obtained a divorce in a proceeding in which her husband appeared and admitted he was the father of her child. The court in its judgment found as a fact that the husband was the father of the child. Seven months after the judgment had been entered, the husband sought by motion to relitigate the issue of paternity. In holding that he was barred from doing so by *res judicata* despite the fact

that he had not contested paternity in the divorce proceeding, the court observed:

> "It is clear not only from the rulings of this court, but also from the numerous other jurisdictions which have considered the question, that the issue of the paternity of minor children becomes *res judicata* between the parties under the original divorce decree, and that it is error for a trial court to subsequently either vacate or modify the original judgment on the grounds that one of the alleged parents, who heretofore stood mute on the question of paternity, has now had a change of heart." *Id.* at 441-42, 204 N.W. 2d at 505.

And in *Peercy v. Peercy, supra*, the husband and wife entered into a separation agreement, subsequently incorporated into the parties' divorce decree, wherein the husband acknowledged paternity of the wife's child and agreed to meet support obligations. When he later attempted to raise the issue of paternity in a contempt proceeding brought by the wife, the court held that he was barred from doing so by *res judicata* because the issue of paternity could have been raised, tried, and resolved in the divorce proceeding. The court also held that statutory procedures for modification of judgments did not encompass such a proposed modification.

It is a well established principle in North Carolina as well that a valid judgment is binding on the parties to it "as to all issuable matters contained in the pleadings, including all material and relevant matters within the scope of the pleadings, which the parties in the exercise of reasonable diligence, could and should have brought forward." *Bruton v. Light Co.*, 217 N.C. 1, 7, 6 S.E. 2d 822, 826 (1940). In *Brondum*, discussed *supra*, Justice Lake observed in *dictum* that the rule established in *Bruton*,

> ". . . has been applied in other jurisdictions to determinations of paternity in divorce proceedings in which the husband and alleged father did not appear or did not contest the paternity of his child. (Citations omitted.) In our opinion this is a correct application of the rule. Thus *if the Hawaii court had jurisdiction to determine the status of the child in relation to the defendant*, its determination thereof would be binding upon the defendant in the courts of this State notwithstanding his failure to appear and to contest the issue of

Williams v. Holland

paternity." Brondum, *supra*, at 199, 232 S.E. 2d at 691. (Emphasis added.)

The case under consideration is distinguishable from *Brondum* because the Nevada court, as we noted earlier, did have the requisite *in personam* jurisdiction over defendant to determine the issue of paternity. We think it presents exactly the situation adverted to by Justice Lake in *Brondum*, and we hold that defendant is barred by principles of *res judicata* from putting paternity in issue. Since defendant is barred from raising the issue of paternity in this enforcement action by plaintiff, it follows that the court below erred in allowing defendant's motion for blood-grouping tests.

Defendant cross-assigned error to the court's granting of plaintiff's motion to strike the affidavit of the physician's assistant and certain portions of defendant's motion and accompanying affidavit. From our holding that defendant is barred from raising the issue of paternity, it follows that neither the affidavit of the physician's assistant nor defendant's own allegations with respect to non-access during the probable period of conception are relevant to this enforcement action brought by plaintiff. Therefore, we find no error in that portion of the court's order granting plaintiff's motion to strike the irrelevant matter.

That portion of the court's order granting defendant's request for blood-grouping tests is reversed; that portion granting plaintiff's motion to strike is affirmed, and this cause is remanded to the District Court, Wayne County, for further appropriate proceedings.

Affirmed in part; reversed in part; and remanded.

Judges PARKER and HEDRICK concur.