OPINION OF THE COURT
Jack J. Cannavo, J.
The petitioner herein by petition dated and verified April 3, 1967 charged the respondent in Family Court of Suffolk County with being the father of her out-of-wedlock male child, who was born on December 24, 1966.
On June 6,1967 the respondent appeared with his attorney before the presiding Judge of said court and, upon his admitting the petition, was adjudged to be the father of the child. He was ordered to pay the sum of $5 per week for the child’s support with the Suffolk County Department of Social Services as beneficiary thereof. Respondent failed to make regular payments. He was summoned to court and on April 22, 1969 was ordered to pay $7 per week with $2 thereof to be applied on account of arrears. On February 9, 1971 this order too was amended to provide for the payment of $15 biweekly with $5 thereof to apply on account of arrears which had accumulated.
At first respondent’s payments were regular; later they became extremely sporadic and finally ceased entirely.
On July 13,1979 a petition was filed against the respondent charging him with a violation of the court’s orders. *599 When respondent appeared in court, he gave as a reason for his failure to make any more support payments the fact that he had discovered, as a result of a letter written by petitioner to court, that he was actually not the father of the child whose paternity he had admitted over 14 years ago. He thereafter filed a motion pursuant to CPLR 5015 and 2218 to vacate the order of filiation and support entered on June 6,1967 on the grounds of newly discovered evidence and that the said order was procured through fraud. Since triable issues "of fact were raised by respondent’s motion, the matter was set down for a hearing.
The evidence at the hearing established that on February 23,1976 the petitioner wrote a letter to the Chief Clerk of the Suffolk County Family Court in which she states that respondent is not the father of the subject child and that she did not “want to live a lie any longer”, that the real father was a Mr. Frank Graham and that it was her desire to get the court and birth certificate records corrected. Petitioner indicated further that she had spoken to Mr. Graham on at least two occasions concerning the paternity of the child when the infant was still only two or three months of age, and had requested him to buy the child clothes. Petitioner confirmed that she was not certain who the father was. She admitted that she was having sexual relations with both Mr. Graham and the respondent at the time she conceived the child.
Respondent acknowledged having had sexual intercourse with petitioner but alleged that this occurred many months prior to her conception. He testified that he had previously admitted paternity because he was married at the time and was extremely anxious to expedite the court proceeding to minimize the chances of his wife finding out about the paternity action which was pending against him. He said he learned about the other man, Frank Graham, only after he received from the clerk óf the court a copy of the letter of February 23, 1976, which petitioner had sent to the court. The evidence established further that respondent has had absolutely no relationship of any kind with the subject child.
Petitioner’s ambivalence concerning the paternity of her child was further clearly demonstrated on November 30, *600 1976, when she filed a paternity petition for the same child against a third putative father, James Chandler. On December 17, 1976 the said James Chandler, who had previously acknowledged paternity in writing, admitted paternity of this child in open court and a second order of filiation was issued declaring James Chandler the father of the child. Respondent became aware of the third possible father for the first time during the hearing herein. On March 21, 1977 this court became aware of the prior order of filiation and vacated this second order on the ground that paternity had been previously established.
The testimony received at the hearing reveals no evidence of fraud. The evidence indicates that the petitioner is a rather promiscuous woman who has never been certain who the child’s actual father is. However, when respondent admitted paternity she was under no obligation to reveal the names of these other individuals. In her testimony she indicates that she now believes that Frank Graham is the father of her child because of a likeness of physical features between him and the child. These facts do not establish any collusion or deceit or the commission of a fraud on either the respondent or the court.
Courts have been consistently reluctant to disturb orders of filiation on the mere ground of newly discovered evidence. Serious consideration has always been given to the relationship of the child to the father and the irreparable harm that might result to the child if the relationship were terminated, the length of time that elapsed before the issue of paternity was raised and the potential conclusiveness of the proof of nonpaternity has also always been of concern to the courts (Matter of June B. v Edward L., 69 AD2d 612; Matter of Elizabeth E. v Leary, 63 Misc 2d 857; Matter of Montelone v Antia, 60 AD2d 603; Matter of Diann P. v Gene P., 86 Misc 2d 844; Matter of Time v Time, 59 Misc 2d 912).
In the case at bar however there clearly appears to be sufficient reason to vacate the order of filiation. The evidence discovered by the respondent more than nine years after he admitted paternity was not merely cumulative; it was new and vitally material on the issue of paternity. The fact that petitioner when she conceived was having sexual *601 intercourse with two other men besides the respondent was within the exclusive knowledge of the petitioner. Respondent knew nothing about this, and no amount of diligence on his part would have revealed this fact to him, if petitioner had not volunteered this information. Moreover, no relationship of any kind developed between the child and the respondent. The respondent never asserted his right to visit with the child or ever held himself out as the child’s father. Further, the child has never sought the respondent or regarded him as being his father. In fact, it seems that the two have never met. Unlike the case involving a father who attempts to repudiate the legitimacy of a child born to a woman to whom he had been married and where a significant father-son relationship has developed through the years, no harm to the child under these circumstances may be anticipated if the order herein were set aside.
The court recognizes the importance of preserving the judgments of courts and the deleterious impact that would result on the. “stability of court rendered decisions and judgments” if judgments and orders were indiscriminately vacated (Matter of Elizabeth E. v Leary, supra, p 861). Certainly, the opening of a judgment in a paternity case “sought by a party who previously acknowledged himself to be the father * * * should be had only in rare and extenuating circumstances” (Matter of Diann P. v Gene P., 86 Misc 2d 844, 847). However, in this case it would be grossly inequitable to permit the judgment of paternity to stand and continue in the face of such remarkable new evidence. The testimony elicited here did indeed reveal extremely unusual and extenuating circumstances. Denying respondent’s motion herein would surely not be in furtherance of justice and would only allow a substantial injustice to persist.
For the reasons hereinabove assigned the motion to vacate the order of filiation is granted. Further, in view of all the undisputed facts established at the hearing, it would be virtually impossible for petitioner ever to be able to establish by clear, convincing and entirely satisfactory evidence that respondent is the father of this child. A further hearing on the issue of paternity would therefore *602 serve no useful purpose. Accordingly, the petition is dismissed and all arrears accumulated as a result of the order of support are canceled.