opinion of the court
Allan Dixon, J.
“It took the testimony of a sage, an oracle, a drunken party goer, a messenger, a sheepherder and his own wife before Oedipus could figure out who his father was.” (New York Times, June, 1981.) Often times a Family Court Judge finds himself with significantly less testimony available to him when called upon to determine the parent of a child in a filiation proceeding. One of the most powerful pieces of evidence which a respondent in a paternity proceeding can produce is a blood grouping test, the results of which exclude him as a possible parent of the child. “The rule of evidence designated as Rule (6), which is that the result of a blood test which excludes paternity is admissible in evidence, has been in effect since March 22, 1935, when subdivision 1-a (the blood test statute) was added to *697 Section 67 of the New York City Criminal Courts Act.” (1 Schatkin, Disputed Paternity Proceedings [4th ed], § 9.01.)
This concept has been part of the Family Court Act since its inception in 1962. Section 532, as amended by chapter 665 of the Laws of 1976, reads as follows: “The court, on motion of any party, shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the alleged father can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. If the alleged father is financially unable to pay for the costs of a test, the court may direct any qualified public health officer to conduct such test, if practicable; otherwise, the court may direct payment from its own funds where the child is not and is not likely to be a public charge or from the funds of the public welfare officer where the child is or is likely to be a public charge.” This provision deals with paternity proceedings and requires the court to grant such a test on the motion of any party.
Language concerning blood grouping tests is also included in section 418 and deals with the issue of paternity as it applies to support proceedings. It formerly read as follows: “The court, on motion of the respondent, on its own motion, may order the mother, her child and the respondent to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. If the respondent is financially unable to pay for the costs of a test, the court may direct any qualified public health officer to conduct such test, if practicable; otherwise, the court may direct payment from its own funds where the child is not and is not likely to be a public charge or from the funds of the public welfare officer where the child is or is likely to be a public charge.” The main distinction is that section 418 allows the court to exercise discretion in ordering the test.
*698 Effective March 2,1981, both sections 418 and 532 were amended to include the following provision. “However, the results of the human leucocyte antigen blood tissue test may be received in evidence to aid in the determination of whether the alleged father is or is not the father except in cases where exclusion has already been established by other blood grouping tests.” (L 1981, ch 9, §§ 1, 2.)
The human leucocyte antigen (HLA) test is a biochemical test which makes use of new blood groups; serum proteins; and red and white blood cell enzymes to analyze the characteristics of a mother, child and putative father.
“HLA is a super-system as compared with all the others. It involves many antigens on the lymphocytes (one of the varieties of white cells). These antigens are controlled by several closely-linked genetic loci (A,B,C,D...) Presently useful for paternity testing are about 40 antigens of the A and B loci, and these determine a very large number of different types, the most common of which has a frequency of less than 1 percent in the population. These antigens of the A and B series demonstrate exclusion in over 95 percent of cases in which the man is not the father. *** There is no doubt that the percentage of exclusion by HLA will soon reach 99 percent, and 99:9 percent is not a wild guess.
“Nine serum protein polymorphisms, beginning with haptoglobin, are next, on the list. Combined, they give exclusions to 75 percent of non-fathers. At the bottom of the list are four red-cell enzymes that have useful polymorphisms, acid phosphatase being the most useful because it has five rather common types. Together, the enzymes provide exclusion in nearly 50 percent of non-fathers. New enzyme polymorphisms, and new serum protein polymorphisms, are still being discovered.” (1 Schatkin, Disputed Paternity Proceedings [4th ed], § 8.08.)
The amendment referred to above obviously changes the classic evidentiary rule which allowed the results of a blood grouping test to be admissible in evidence only if it excluded the putative father. The change in the law, however, did not address the issue who is responsible for the payment for such test. This is the issue raised by counsel for the respondent in this matter.
*699 The Commissioner of Social Services of the County of Rensselaer filed a petition, dated and verified March 30, 1981, requesting support from the respondent for his wife and unborn child. On the initial return day the respondent alleged that he was not the father of the unborn child and requested a blood grouping test after the birth of the child. In particular, the respondent requested an HLA test. The issue of payment was raised by the respondent and the matter was adjourned for the parties to present arguments. A Law Guardian was assigned for the child at the same time.
It is important to note at this point that the request for the blood grouping test was made pursuant to section 418 of the Family Court Act. This is a support proceeding and not a filiation proceeding under article 5 of the Family Court Act. Raising the issue of paternity does not transform the proceeding into a paternity proceeding under article 5. (Hansom v Hansom, 75 Misc 2d 3; Matter of Schneider v Schneider, 72 Misc 2d 423.) As pointed out above, section 418 allows the court to exercise discretion in deciding whether a test should be ordered. Even after the court has ordered a blood grouping test, it retains discretion in deciding whether to accept the test results into evidence, even if they conclusively exclude paternity. (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 418, p 99, 1976-1980 Supplementary Pamphlet.)
Applying the principles of section 418 as stated above, the court is of the opinion that the blood grouping test should be granted. The issue which remains to be decided is who should be responsible for payment of the test and the manner of such payment.
As stated above, the current section 418 reads as follows: “Blood grouping test; costs of test. The court, on motion of the respondent, or its own motion, may order the mother, her child and the respondent to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the alleged father can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. However, the results of the human *700 leucocyte antigen blood tissue test may be received in evidence to aid in the determination of whether the alleged father is or is not the father except in cases where exclusion has already been established by other blood grouping tests. If the respondent is financially unable to pay for the costs of a test, the court may direct any qualified public health officer to conduct such test, if practicable; otherwise, the court may direct payment from its own funds where the child is not and is not likely to be a public charge or from the funds of the social services officer where the child is or is likely to be a public charge.” Although the section now allows the use of the results of the HLA test as evidence even if it does not exclude the respondent, the Legislature made no change in the payment provisions of the statute. The section clearly allows the court to direct payment from three sources: the respondent, if he is financially able; the court’s own funds; or from the funds of the social services officer where the child is or is likely to be a public charge.
Review of the financial disclosure statement of the respondent indicates that he is financially able to pay for the test. His attorney argues, however, that the statute, as amended, is unconstitutional in that the payment provisions as applied to the respondent are discriminatory and deny equal protection of the law in that they are gender based and not based on an important governmental objective nor substantially related to an important governmental objective. He points to People v Whidden (51 NY2d 457) as an enunciation of the standard of review to be applied to this matter. Counsel for the respondent argues that the purpose of the statute prior to the recent change was to provide a means whereby a respondent could be exonerated from a false charge that he fathered a child, in that the statute allowed a financially capable respondent to pay for a blood test, the payment provision was related to the purposes of the statute. However, the recent change in the law, argues counsel for the respondent, expands the benefit of the statute by providing the court with probative evidence concerning paternity. Thus, any requirement that the respondent pay for such a test no longer serves an *701 important governmental objective, and, therefore, should be struck down as unconstitutional.
Counsel for John R Beaudoin, as Commissioner of Social Services of the County of Rensselaer, opposes the motion as does the Law Guardian appointed to represent the child. Both rely heavily on the presumption of legitimacy to counter respondent’s arguments. As the Law Guardian states in her report, “the legislature did not intend to lighten the burden of proof to bastardize children of a lawful union by the backhanded method of approving the use in the State of New York of the HLA test for paternity so as to open a Pandora’s Box for contesting legitimacy at whim or caprice of either parent.”
The key element of article 4 of the Family Court Act blood grouping test provision is the discretion which the court has. As is mentioned above, this discretion includes not only the decision as to whether a blood grouping test should be granted but also as to whether the results of such test should be received in evidence. (Brite v Brite, 61 Misc 2d 10, affd 34 AD2d 1109.) The latter is governed by a variety of factors, but is an issue which at this stage of the proceeding the court will not consider. The discretion which is available to the court in both these instances is important in that it indicates the weight which is given the presumption of legitimacy. Additionally, the discretion appears to be congruent with the purposes of article 4.
The overriding purpose of article 4 centers on the issue of support and section 418 must be viewed in this light. Contrary to the position of counsel for the respondent that the purpose of that section is to provide a means by which a respondent can be cleared of a false claim of paternity, this court believes that the discretion given the court under this section indicates a purpose of protecting the children of the parties from spurious claims of a father designed to avoid or delay paying support. Keeping this purpose in mind, this court finds that section 418 does serve a legitimate governmental objective, the support and care of children. This is particularly true in this case as the mother and child are recipients of public assistance.
The respondent relies heavily on the recent United States Supreme Court case Little v Streater (452 US 1). *702 In this case, the Supreme Court held that the Connecticut statute concerning blood grouping tests was unconstitutional as it was violative of the due process rights of the respondent. That case is clearly distinguishable from the instant action in that it deals with a paternity suit and an indigent respondent. In Little, the respondent was without funds and requested a blood grouping test with the State to pay the cost. The trial court granted the request for the blood grouping test but ordered the respondent to pay. Naturally, being indigent, the logical consequence flowed from the decision. The respondent could not pay and, therefore, no blood grouping test was had.
This is not the case before this court. The respondent is employed and we are dealing with the support of a child who is not born out of wedlock. However, there is a point well taken in the arguments of the respondent, one which this court recommends the Legislature consider in light of the recent changes to the law. Where, as here, the results of such a test may be used as a “sword as well as a shield” the court should be able to exercise some sort of discretion in apportioning the cost of such a test. Certainly, if a presumptive father truly believes that he is not the father of a child, the payment for a blood grouping test is an investment well made. Likewise, if the petitioner feels that an HLA test would strengthen her case and seeks to use it as a piece of probative evidence, the option to require payment, or at least contribution, should be available explicitly in both the article 4 and article 5 provisions.
Turning to the issue before the court, it is determined that section 418 of the Family Court Act as amended is constitutional. It is further determined that the respondent’s request for a blood grouping test is granted. Finally, using the discretion which this court feels is available under section 418, the respondent is found financially available to contribute the sum of $250 for and towards the cost of an HLA blood grouping test. The language of section 418 allows the court to consider financial ability of the respondent in looking for alternatives. In the present case, the court finds the respondent unable financially to pay the entire cost of the test. Since the child is a recipient of public *703 assistance in Rensselaer County, the Department of Social Services is directed to pay the amount remaining toward the cost of the test.
This court further hopes that the Legislature will address the problem concerning payment for blood grouping tests created by the recent amendment to the law.
Submit order accordingly.