OPINION OF THE COURT
Bernard E. Stanger, J.
HISTORY OF THIS PROCEEDING
This is a proceeding for an upward modification of support for the petitioner and her two minor children. The matter came before this court and was initially referred to a hearing examiner who made a recommendation to increase the support then in force. Respondent objected to the recommendation and the court referred the matter to a different hearing examiner for a rehearing. The second examiner recommended increasing the support even more than that recommended by the first examiner, and again the respondent objected. The respondent ordered a transcript of the tapes of the second hearing examiner’s hearing which entailed a considerable lapse of time in the preparation. During this wait, the respondent, by notice of motion dated November 24,1982, moved this court, pursuant to subdivision (a) of section 418 of the Family Court Act for a human leucocyte antigen (H.L.A.) blood test to be *46 conducted to determine the parentage of Sean McCann, who is the son of the petitioner. The application did not affect the other child, Timothy.
This motion was resisted vigorously by petitioner, but the court in its order of December 9, 1982 held that the blood test should be conducted and directed the parties to make appropriate arrangements forthwith. The court also allocated the entire cost of the test to be borne by the respondent alone. The test was not conducted.
By application dated December 20, 1982 an order to show 'cause was submitted to this court on behalf of the infant Sean McCann, seeking leave to become a party and intervenor. It also sought to annul and vacate the aforementioned order of December 9,1982 directing the holding of an H.L.A. blood test.
DECISION
This case originally arose in this court in 1968 as a support proceeding and until November, 1982 the issue of paternity of either of petitioner’s two minor children has never been raised. Respondent, who was represented by counsel, had ample opportunity to claim nonpaternity of Sean McCann, but for reasons this court will not speculate on, he chose to remain silent and pay support to petitioner as directed by the court.
As already noted, this court, by order of December 9, 1982, directed the holding of an H.L.A. blood test with respect to Sean McCann. This decision was not lightly arrived at, for a court has a duty to prevent vexatious or frivolous challenges to paternity which could work irreparable harm on a child. (Matter of Time v Time, 59 Misc 2d 912; Hill v Hill, 20 AD2d 923.)
The factual allegations, which have not been controverted, show that petitioner’s older son, Timothy McCann, was born on June 21, 1965 at a time when petitioner and respondent were neither living together nor married. Over a year later, on August 9, 1966, the parties were married, but even then did not live together until December of that year. Four months later, on March 31, 1967 Sean McCann was born and five days after the birth of Sean McCann respondent left petitioner permanently.
*47 In opposing respondent’s motion for an H.L.A. test affecting Sean McCann, petitioner not only fails to rebut the foregoing, but likewise fails to offer any explanation whatever why Sean was born only four months after the parties commenced living together. Presumably, petitioner is relying on the presumption of paternity that attaches by reason of their being married. However, presumption of paternity is no longer conclusive. (Hynes v McDermott, 91 NY 451; Matter of Matthews, 153 NY 443; Anonymous v Anonymous, 1 AD2d 312.) The court, in the last-named case observed at page 316: “Reason and logic, as well as a recognition of the modern advances in science, compel a determination that the presumption of legitimacy is not conclusive but rebuttable.”
In the moving papers that led to the order of December 9, 1982, the respondent also claimed “that at the time of the conception [of Sean], petitioner was a neighbor of, and socially seeing and dating her next-door neighbor, Kjeld Tideman-J ohannessen, whom petitioner later married, and the child has a completely different personality than myself or Tim and has the personality, facial configurations and coloring of Kjeld Tideman-J ohannessen”.
The court reaffirms that a proper showing for the H.L.A. test was made and, on its face, negates the charges of petitioner and the would-be intervenor contending that the basis for the application is wholly frivolous and lacking in merit.
We do not deem it necessary to comment upon the recently enacted legislation empowering the Family Court to order H.L.A. blood tests. Ample commentary already exists. (Matter of Beaudoin v Tilley, 110 Misc 2d 696; Matter of Jane L. v Rodney B., 108 Misc 2d 709.) The important point to note is that section 418 of the Family Court Act vests a discretionary authority with this court which, unlike that in section 532 of the Family Court Act (relating to paternity proceedings) gives the court wide latitude in evaluating conflicting allegations contained in motion papers. This discretionary power is broad enough to permit a consideration of the instant motion which, by implication, necessitates examining the newly presented matter to see if it overcomes the original showing that led *48 to the December 9, 1982 decision. We first, however, grant that portion of Sean McCann’s motion that asks to be made a party. Section 241 of the Family Court Act permits this by allowing an “interested person” to appear with counsel. His present counsel, James Filenbaum, Esq., is assigned as his Law Guardian with effect from December 20,1982, the date the motion was initiated. Hereinafter, occasionally Sean McCann shall be referred to herein as the “intervenor”.
Several arguments advanced by the intervenor involved variations of the doctrine of estoppel. One of these contends that respondent is estopped by laches in having waited 15 years before bringing on the application. The Family Court in Richmond County ordered blood-grouping tests (exclusionary) in 1973 for three children who were born in 1956, 1957 and 1958 so that a maximum elapsed time of 17 years occurred before paternity was challenged. (Hansom v Hansom, 75 Misc 2d 3.) In Matter of Schleimer v Swann (93 Misc 2d 520), former Judge Howard Miller of Rockland County Family Court ordered a blood test eight and one-half years after the child was born. Section 451 of the Family Court Act expressly provides for continuing jurisdiction in support proceedings and has been interpreted as applicable to the instant situation in Hansom v Hansom (supra). Accordingly, the argument of estoppel by laches is lacking in merit.
Another contention raised by the intervenor and by petitioner is that respondent was before two Judges of this court, in 1968 and 1976, and on neither occasion raised the issue of nonpaternity of Sean. They also contend that he failed to raise the issue in an examination before trial and the hearing examiners to whom the case had been referred. As noted earlier herein, there is no question that respondent had ample opportunity to raise the issue, but chose not to. The question arises whether this led to an estoppel that precludes him from doing so now.
The court holds that no estoppel arises. The Court of Appeals held in New York Rubber Co. v Rothery (107 NY 310), that silence alone will not work an estoppel unless there is a duty to speak. See, also, Matter of McArdle (140 Misc 257, 266) where it was held that “Estoppel by silence *49 arises where a person, by force of circumstances, is under duty to another to speak and refrains from doing so.”
Respondent was under no duty whatsoever to disclaim paternity of Sean McCann in any of the various phases of this proceeding. Equally, his silence worked no prejudice against petitioner, for the court awarded her support for both children and she benefited thereby. We shall never know what prompted respondent’s course of action, but such an unusual position is not unknown to the courts. In Matter of Cheryl B. v Alfred W.D. (99 Misc 2d 1085, 1086) respondent went so far as to admit paternity stating, in part “ ‘well, its tough to get involved in. I would rather pay the damned thing.’ ” The court observed, at page 1088, “It is recognized that an admission may be made, not because the putative father recognizes the child as his own, but, as a means to avoid embarrassment which is incidental to a contested proceeding concerning a subject as sensitive as paternity” citing Hansom v Hansom (75 Misc 2d 3, supra).
In a still further invoking of the estoppel doctrine, intervenor’s' counsel in a supporting affirmation states: “Respondent has participated in a strong recognition of the child as his child.” As noted earlier herein, respondent permanently left petitioner five days after Sean McCann was born and no support was forthcoming until 1968 when petitioner initiated a support proceeding in this court. According to petitioner, respondent was generally delinquent in payment so that she came back to this court in 1976 for assistance. This is hardly consistent with a strong recognition of intervenor as his child.
But the intervenor and his petitioner mother have also made statements in supporting affidavits on this application. This is what the intervenor says concerning his alleged father’s strong recognition of him as his child: “Throughout my life I have had great difficulty in dealing with the fact that my father, Richard Guterl, has had little contact with me, has treated my brother, mother and myself irresponsibly and has not been there when I needed him.”
The intervenor’s mother states in her affidavit: “Since Mr. Guterl shows no concern for his children as a father in terms of emotional and financial support, all he has ever *50 provided them with is a sense of identity”. These statements clearly rebut any showing of a strong recognition of the intervenor as respondent’s child. Indeed, he has shown no recognition as a parent for either of the petitioner’s children.
Much ado has been made in intervenor’s affidavit about his emotional state as a result of this claim by respondent that he is not intervenor’s father. He flatly states that he will not submit to the blood test on the ground that he “knows” Richard Guterl is his father. This, of course, is hearsay and is accorded no credit, but the court finds it odd that, rather than refuse the test, the intervenor does not hasten to have the test performed. In view of the raising of the question of paternity it would appear to the court that a youngster would be more agonized by not knowing who is his father than by not taking the test and consequently remaining in doubt the rest of his life.
The courts today, once satisfied that a proper showing has been made, are not hesitant in granting an order for a blood test under section 418 of the Family Court Act. It has been held that the best interests of the child involved are served by such tests. (Matter of Beaudoin v Tilley, supra; Matter of Jane L. v Rodney B., 108 Misc 2d 709, supra.) In the latter case, the court in ruling on the constitutionality of the enabling legislation, held that the test was a “slight intrusion on individual privacy” and was justified by the public interest in reliable evidence of paternity, both for the sake of child welfare and of conservation of public assistance funds. In Beach v Beach (114 F2d 479, 482), the District Court noted that: “If the child is appellee’s, the tests will prove nothing and harm no one. If the child is not his, it would be unjust to prevent him from proving the fact.” In Matter of Schleimer v Swann (93 Misc 2d 520, 522, supra), the Family Court in ordering a blood test has this observation: “To leave the respondent without the benefit of blood tests which could exclude him as the father of the child concerned is depriving him of a basic right. Both the child and the public have a right to know who is the father of the child or if a particular person is not the father.”
The Appellate Division, First Department, in State of New York ex rel. H. v P. (90 AD2d 434, 439), made the *51 following observation: “New York courts have not hesitated to order the production of evidence in the form of blood tests to overcome the presumption of legitimacy when a child’s paternity is an issue. (See, e.g., Kwartler v Kwartler, 291 NY 689; Maureen G. v Kenneth G., 56 AD2d 644; O’Brien v O’Brien, 4 AD2d 946; Anonymous v Anonymous, 1 AD2d 312, supra.) But in each of these cases the blood test ordered would have settled the paternity question at issue, one way or the other.”
Upon all of the foregoing, this court reaffirms its order of December 9,1982 and denies intervenor’s motion to vacate it, and the parties and the intervenor are directed to submit to an H.L.A. test as expeditiously as possible. In view of petitioner’s representations on this motion that sharp practices have crept into the blood testing procedure, the court cautions respondent to be positive of which of petitioner’s two sons appears at the appointed time. This is particularly important in view of the intervenor’s twice made statement: “I am not going to take the blood test.” The court directs that this test be completed not later than February 25, 1983. In the event of noncompliance by the intervenor and petitioner with the mandates of this order, this court, pursuant to CPLR 3126 directs the termination of support payments by respondent to the extent of one half of the amount presently being paid, with effect from December 9, 1982. The Rockland County Support Collection Unit will be provided with an appropriate supplementary order should noncompliance occur.