**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,**

v.

**Colin J. McCULLOUGH, Appellant.**

**No. 90–1357.**

Supreme Court of Iowa.

April 17, 1991.

Theodore T. Duffield and James A. Lorentzen of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, and Steven K. Scharnberg and Hugh J. Cain of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

Attorney Colin J. McCullough has appealed from the recommendation of the fourth division of the Grievance Commission of this court, which heard evidence concerning allegations that attorney McCullough violated the Iowa Code of Professional Responsibility for Lawyers. In reviewing the arguments presented, we order that appellant's license be suspended.

Appellant was admitted to practice law in Iowa in 1972 and is currently practicing in Sac City. In August 1980, he was retained by Nancy Steuk to represent her as executor of the estate of her former husband, Marc D. Schreiber, who had died earlier that month. In this representation of Nancy Steuk, appellant discovered that the circumstances surrounding the dissolution of her marriage to Marc D. Schreiber indicated that a fraud had been practiced against her and on the court.

Following some preliminary investigation, Nancy Steuk and appellant agreed that he should represent her in bringing an action to set aside the June 27, 1977, decree dissolving her marriage to Schreiber. Appellant and Nancy entered into a compensation agreement which provided that "in the event of recovery" appellant's out-of-pocket expenses should first be repaid from the proceeds and that one-third of the amount remaining was to be received by appellant as his fee for the litigation.

The context of this agreement makes it clear that the "recovery" to which it refers was a spouse's statutory share of Schreiber's estate which Nancy would receive if the dissolution were voided. The estate of Marc D. Schreiber contained sufficient assets that Nancy's statutory share, if she was successful in voiding the dissolution, would exceed $400,000.

Appellant filed a petition to vacate the Schreiber dissolution decree, alleging that (1) the action was brought in the wrong county, (2) Marc D. Schreiber misrepresented the extent of his assets to the court, (3) Marc D. Schreiber otherwise committed fraud upon the court in respect to the fixing of child support and alimony, and (4) Nancy Schreiber Steuk was the victim of extrinsic fraud practiced by Marc Schreiber which precluded her from defending against the dissolution action. The action was tried to the court. In a decision filed August 31, 1981, the court concluded that a void judgment is not subject to the one-year time restriction for setting aside final judgments under Iowa Rule of Civil Procedure 253(a). It further found that Nancy's claim was not barred by laches and that she had been precluded from defending against the dissolution action by force and threats of injury. Based on these findings, the court voided the June 27, 1977, dissolution decree.

After the successful resolution of the litigation, Nancy became the beneficiary of estate assets which were difficult to liquidate. For this reason, she sought some delay in the payment of appellant's fee. Appellant and Nancy entered into an agreement which delayed payment of his contingent fee of $158,793 and secured payment of same by a real estate mortgage on property of the estate in which Nancy had acquired a spouse's statutory share.

In preparing to close the Marc D. Schreiber estate, appellant, with the assistance of another member of his firm, prepared a final report and order approving same. Appellant mailed these documents to a district judge for approval. He gave the assurance that all requirements for payment of taxes had been satisfied. In fact, the Iowa inheritance tax had not been fully paid. The district court, accepting appellant's assurances that all formal requirements for closing the estate had been met, entered an order discharging Nancy as executor. Because of later financial reverses, Nancy Steuk was not able to make payment of the Iowa inheritance tax owed on estate assets.

Later, Nancy balked at paying appellant's contingent fee of $158,793. She retained other counsel to represent her in this dispute. Eventually, appellant compromised his attorney fee claim and agreed to

accept the sum of $20,000 in full payment.[1] He also sought to obtain an agreement from Nancy's new counsel "that there were no ethical violations arising out of or because of the representation of Nancy, et al., by the McCullough Law Firm and its various employees."

On March 15, 1990, the Committee on Professional Ethics and Conduct filed a complaint against appellant. It charged him with violating the following disciplinary rules:

(1) DR 1–102(A) (an unspecified, general allegation of violation of disciplinary rules)

(2) DR 2–106(A) and (C) (improperly entering into a contingent fee agreement in a domestic relations action and charging an excessive fee)

(3) DR 5–101(A) (accepting employment in which his judgment was affected by his own financial and business interests)

(4) DR 5–103(A) (acquiring a proprietary interest in the subject matter of litigation)

(5) DR 5–104(A) (entering into a business transaction with a client in which they have differing interests), and

(6) DR 6–101(A) (neglect of a legal matter entrusted to him)

These allegations were heard by the fourth division of the Grievance Commission.

The Commission found that appellant's conduct in representing Nancy did not violate DR 2–106(C) which prohibits contingent fee agreements in actions involving domestic relations. The Commission did find, however, that appellant's fee was excessive given the circumstances and was a violation of DR 2–106(A). The Commission further found that, by taking a real estate mortgage on Nancy's interest in property in the Marc D. Schreiber estate, appellant had (a) acquired a proprietary interest in the subject matter of litigation in violation of DR 5–103(A), and (b) entered into a business transaction with a client in which they had differing interests in violation of section DR 5–104(A).

In addition to the findings already noted, the Commission found that appellant's action in making false statements to the court concerning the payment of inheritance taxes constituted a violation of DR 1–102(A) and that his attempt to secure an agreement from Nancy's counsel negating potential ethical violations on his part was itself an ethical violation. The Commission recommended that appellant's license be suspended for a period of six months.

### I. *The Fee Issues.*

■ On the attorney fee issues, appellant urges us to reject the Commission's conclusion that his fee was excessive. The Committee resists this request and, in addition, suggests that the contingent fee agreement was improper because the litigation involved domestic relations matters.

In resolving these issues, we are satisfied that the Commission was correct in concluding that the litigation to void the Schreiber dissolution decree was not subject to the prohibition which DR 2–106(C) places on contingent fee contracts in domestic relations matters.

The proscriptions contained in DR 2–106(C) are based on the concerns expressed in EC 2–22 which observes that, "[b]ecause of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relation cases are rarely justified." The gravamen of the litigation which appellant agreed to pursue on Nancy's behalf was a claim to void a judgment on the ground of extrinsic fraud. There were no domestic issues involved, only economic considerations involving persons who were no longer married and one of whom was dead. The concerns expressed in EC 2–22 simply did not exist.

■ On the other aspect of the fee issue, we disagree with the Commission's determination that the contingent fee was excessive. All of the well-recognized reasons for a contingent fee agreement existed with respect to the litigation to be pursued.

---

1. Appellant testified at the hearing that he only agreed to do this because by this time Nancy was hopelessly insolvent and his mortgage security was worthless.

Nancy had no funds to pay appellant, success in the litigation would produce a res from which payment of fees could be made, and the chances of success were very uncertain. *See Wunschel Law Firm, P.C. v. Clabaugh,* 291 N.W.2d 331, 334–35 (Iowa 1980).

Although the Committee, arguing from a position of hindsight, suggests that the litigation was simple and that the chances for success were good, we reject that contention. Under well-established legal principles, the only type of fraud which is recognized as a basis for declaring a judgment to be void is extrinsic fraud. *Sorenson v. Sorenson,* 254 Iowa 817, 825, 119 N.W.2d 129, 134 (1963); *Miller v. AMF Harley–Davidson Motor Co.,* 328 N.W.2d 348, 353 (Iowa App.1982).[2]

Nancy's theory for establishing extrinsic fraud was to convince the court that, as a result of physical abuse and other intimidation, she was effectively precluded by Marc Schreiber from taking any active role in the dissolution proceedings. To prevail on this theory, she was not only required to show that the intimidation existed at the time the dissolution decree was entered in 1977 but also that it continued up until the time of Schreiber's death and precluded her from challenging the decree at an earlier time. *See Sorenson,* 254 Iowa at 825–26, 119 N.W.2d at 134. As Nancy's counsel, appellant was required to convince the court of these circumstances by the testimony of a witness who sought to gain a substantial sum of money if the litigation was successful. Being able to do this was far from a sure thing.

Based on the considerations which we have discussed, we do not find the one-third contingent fee to be unreasonable. Nor do we believe that it is the intent of DR 2–106(B) that contingent fee agreements must be reexamined at the conclusion of successful litigation with respect to the factors applicable to noncontingent fees. Based on all of the considerations which we have discussed, we conclude that appellant was not guilty of any ethical violation with respect to the fee arrangement with Nancy.

## II. *The Mortgage Transaction.*

We next consider the violations which the Commission found arising out of the mortgage transaction. With respect to the alleged violation of DR 5–101(A) and DR 5–104(A), we believe the Commission's conclusions are contrary to our decision in *Committee on Professional Ethics and Conduct v. McCullough,* 465 N.W.2d 878, 884 (Iowa 1991). In that case, we recognized that taking a contractual security interest to secure payment of attorney fees does not constitute entering into a business transaction with a client in violation of DR 5–104(A). We further concluded in the cited case that the prohibitions contained in DR 5–101(A) only apply at the inception of an attorney's employment. In the present case, the mortgage transaction occurred after the litigation was concluded. This circumstance also obviates any claimed violation of DR 5–103(A) prohibiting an attorney from acquiring a proprietary interest in the subject matter of litigation.[3] Based on these considerations, we find that appellant was not guilty of any ethical violations with respect to the mortgage transaction.

2. The allegation that the action was brought in the wrong county would not serve to void the decree because Iowa Code § 598.2 now treats this element as venue rather than jurisdiction. The alleged misrepresentations as to assets and the need for alimony and child support, even if established, would have constituted intrinsic fraud which would not suffice to vacate a decree after the one-year period established in Iowa Rule of Civil Procedure 253(a).

3. Apart from the purely temporal considerations involved, we doubt that DR 5–103(A) prohibits a lawyer from taking a security interest in a res sought to be recovered at the inception of the attorney-client relationship unless some special circumstance exists which causes this to affect the attorney's independent judgment more demonstrably than does a contingent fee agreement. It is recognized in EC 5–7 that "it is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of litigation." A general prohibition against taking such security could place the lawyer at a substantial disadvantage to other creditors of the client or the owner of the res.

III. *Misrepresentations in Final Report Concerning Payment of Taxes.*

■ We agree with the Commission's conclusions that appellant violated DR 1–102(A) and DR 6–101(A) in submitting to the court the final report in the Marc D. Schreiber estate with the assurances that all taxes had been paid. The misrepresentations involved were not obviated by the fact that an extension of time for filing the inheritance tax return had been obtained or because the estate was financially unable to pay the taxes at that time. We are not suggesting that an insolvent estate may not be closed. Clearly, however, this should not have been attempted in the Schreiber estate without advising the court of the inheritance tax deficiency and providing state revenue officials with an opportunity to state their recommendations. Appellant's violation of disciplinary rules with respect to this transaction warrants discipline.

IV. *Attempting to Secure an Agreement from Nancy's Counsel with Respect to Potential Ethical Violations.*

Finally, we consider the Commission's conclusions that appellant acted improperly in seeking to exact from Nancy's counsel an agreement that he was guilty of no ethical violations. Although the Commission suggested that this was a violation of DR 6–102(A), our reading of that rule suggests that it pertains to the exculpation of professional malpractice rather than ethical violations. Notwithstanding this conclusion, we believe that attempting to negate another lawyer's obligation to report ethical violations is an ethical violation stemming from DR 1–103(A). Appellant's conduct in this regard warrants discipline.

V. *Disposition.*

Based on the ethical violations by appellant which we have found, we order that his license to practice law be suspended with no possibility of reinstatement for sixty days. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct. R. 118.12. Upon application for reinstatement, appellant must establish that he has not practiced law during the suspension period and has otherwise complied with the provisions of our rules, including client notification and disengagement from pending legal matters. Costs of this appeal are assessed fifty percent to appellant and fifty percent to the appellee.

LICENSE SUSPENDED.