**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Thomas J. HOFFMAN, Respondent.**

No. 97–1015.

Supreme Court of Iowa.

Dec. 24, 1997.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Robert L. Sikma, Sioux City, for respondent.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

This attorney disciplinary matter is before us for de novo review in accordance with Iowa Supreme Court rule 118.10. A division of the grievance commission has recommended that we suspend respondent's license to practice law for a period of six months based on respondent's attempt to collect excessive attorney fees. We concur in the com-

mission's findings and its recommended sanction.

I. Respondent Thomas Hoffman entered into a contingent fee contract with Elaine Jahde on April 26, 1994, to represent her in an attempt to recover damages arising out of the employment-related or wrongful death of her husband, Richard Jahde. Richard Jahde died on April 18, 1994, from injuries sustained while working at Sioux Feed Company. Farmland Insurance Company provided workers' compensation coverage and general liability coverage for Sioux Feed. On April 19, 1994, Denise Baker Hamilton, the workers' compensation claims supervisor for Farmland, received notification by telephone of Richard Jahde's death. Hamilton initially was unsure whether Richard Jahde was an employee of Sioux Feed or an independent contractor and thus, whether his accident would be covered by workers' compensation benefits. However, after further investigation and an opinion letter from Farmland's counsel, Hamilton determined that Jahde's claim was compensable under the workers' compensation policy.

The attorney fee contract entered into by respondent and Elaine Jahde was intended to cover all claims arising out of Richard Jahde's death. At the time of the initial consultation with Elaine Jahde, respondent identified several possible theories of recovery which seemed promising, including: negligence, workers' compensation, co-employee liability, products liability and medical malpractice. The contract provided for a fee equal to twenty-five percent of the recovery if made without filing suit, a fee equal to thirty-three percent of the recovery if made after suit was filed and before notice of appeal to any appellate level, and a fee equal to forty percent of the recovery if retried. In the event no recovery was made, no fee for services would be charged. During the next several weeks, respondent began investigating the potential claims.

On June 1, 1994, Hamilton sent a letter to Elaine Jahde advising her that the incident resulting in Richard Jahde's death was covered by Sioux Feed's workers' compensation policy. Payment of the benefits owed Elaine Jahde began at that time. On June 2, 1994, while Farmland's letter acknowledging compensability was still in the mail, respondent sent an original notice and petition for workers' compensation benefits to Sioux Feed. At that time, respondent was not aware of the identity of Sioux Feed's workers' compensation carrier and had not made contact with any Farmland representative. Respondent learned of the Farmland letter and its acknowledgment of compensability on June 3, 1994, when he received a telephone call from Hamilton, who called regarding Sioux Feed's receipt of the workers' compensation petition. Although Hamilton advised respondent of Farmland's acknowledgment of coverage, respondent told her that he wished to pursue the workers' compensation claim for purposes of discovery on the other possible theories of recovery.

On June 7, 1994, respondent sent the workers' compensation petition along with proof of service to the industrial commissioner. Those papers were received and filed by the industrial commissioner on June 10, 1994. At the time of the service of the petition, respondent also served a discovery request on Sioux Feed seeking documents which would be relevant to Jahde's other potential claims, specifically, the co-employee liability claim. Farmland filed a motion to quash, arguing that since it had already acknowledged compensability, discovery should not be allowed to continue. A deputy industrial commissioner sustained Farmland's motion to quash, but conditioned the ruling on Farmland filing a written admission of liability. Farmland submitted a written admission of liability on July 25, 1994.

On September 2, 1994, respondent and Elaine Jahde signed an original notice and petition for a partial commutation of the workers' compensation benefits. The petition requested a partial commutation of $62,446 from the remaining total benefit amount of approximately $280,000. Attached to the petition was Elaine Jahde's claimant's statement of need, stating that partial commutation was needed because "I have agreed to pay attorney fees equal to 33% of the total settlement proceeds in this case [and] ... I do not otherwise have resources sufficient to pay attorney fees in this case." On October

2, 1994, respondent and Jahde signed an amended notice and petition for partial commutation, seeking a partial commutation of $37,277. Respondent testified that the amount stated in the original petition for commutation was miscalculated. Hamilton directed Farmland's legal counsel to resist the partial commutation because the fees requested were "unwarranted and excessive" and the partial commutation was not in Jahde's best interest.

A hearing was held regarding the partial commutation on February 1, 1995. Respondent submitted a time statement covering the period between April 26, 1994 and February 1, 1995. The statement showed that he expended 131.75 hours on Jahde's various claims during that time period. He also submitted a list of expenses incurred in working on the claims totaling approximately $3700. Respondent stated that the records were not kept contemporaneously with the work performed, but were reconstructed prior to the hearing.

The deputy industrial commissioner determined that because the workers' compensation recovery was obtained independent from any action taken by respondent, a contingent fee was "unreasonable and unwarranted." The deputy commissioner concluded that respondent was only "entitled to recover fees at an hourly rate for the amount of time reasonably attributable to the workers' compensation proceeding prior to the time that [Jahde] was notified that benefits were going to be voluntarily provided to her." The deputy commissioner found that only fifteen hours reported on the billing statement were reasonable with respect to work performed on Jahde's workers' compensation claim. The deputy commissioner concluded that partial commutation was not in Jahde's best interest and that respondent should not be allowed a fee in excess of $2250 plus reasonable expenses unless he sought approval of additional fees through the industrial commissioner. The deputy commissioner also concluded that Farmland's acknowledgment of compensability was not due to respondent's efforts. The deputy commissioner sent a copy of the commutation decision to the Committee on Professional Ethics and

Conduct of the Iowa State Bar Association, now known as the Iowa Supreme Court Board of Professional Ethics and Conduct, which precipitated this proceeding.

During the discovery process on this disciplinary matter, the board submitted requests for admission to respondent. Request number six stated as follows: "The purpose of the proposed commutation was to collect a fee for Respondent's legal services." In his response to this request, respondent stated that the purpose of the proposed partial commutation was "[t]o collect [a] fee equal to value of attorney services performed plus expenses, rebating an amount in excess of same to Elaine I. Jahde." In his answers to interrogatories propounded by the board, respondent alleged that although he sought a partial commutation equal to thirty-three percent of the total workers' compensation recovery, he intended to keep only an amount computed on an hourly basis for time spent on all of Jahde's claims and for expenses in pursuing those claims. He alleged that he intended to return the excess to Jahde for her personal use.

Respondent testified at the grievance commission hearing that subsequent to the April written fee agreement, he and Jahde entered into a separate oral fee agreement under which he would be paid by the hour for time spent pursuing the co-employee liability case. There is no written record of this separate fee agreement nor are there contemporaneous billing records to support the agreement. While Jahde testified that an oral fee agreement had been entered into regarding the co-employee liability case, she was unclear as to the terms. Respondent testified that he sought the partial commutation to pay for the attorney fees accumulated under this oral fee agreement because Jahde was unwilling to use other assets to pay the hourly fees.

The alleged separate oral fee agreement for the co-employee liability case and respondent's intention to rebate a large portion of the amount received in the partial commutation to Jahde were not mentioned in the original petition for commutation, the amended petition, nor at the hearing before the commissioner. The only documents offered into evidence which support respondent's in-

tent with regard to the partial commutation proceeds are letters to a deputy industrial commissioner and Farmland's counsel, which make reference to the proceeds being used for probate costs and pursuit of other claims.

The grievance commission concluded that the evidence presented did not support respondent's claim regarding the separate oral fee agreement for the co-employee liability claim. The commission also found that respondent had no intention of rebating a portion of the partial commutation proceeds to Jahde. The commission noted that if respondent's allegations were true then he would have committed other ethical violations, such as misrepresenting the true reason for the commutation in the proceedings before the deputy industrial commissioner and failing to advise Jahde that she should seek independent legal advice before renegotiating the contingent fee contract in favor of an hourly contract. The grievance commission noted in its recommendation that its decision was influenced not only by respondent's attempt to collect an excessive fee but by his lack of candor in the grievance commission's discovery process. The grievance commission unanimously recommended that respondent's license be suspended for six months.

■ II. In attorney discipline proceedings, we review the grievance commission's findings of fact and recommendation de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather*, 534 N.W.2d 428, 430 (Iowa 1995); Iowa Sup.Ct. R. 118.10. We give respectful consideration to the commission's findings and recommendation, but are not bound by them. *Sather*, 534 N.W.2d at 430.

■ The burden of proof rests with the board to prove by a convincing preponderance of the evidence that the respondent attorney committed the conduct complained of and by doing so violated the Code of Professional Responsibility as charged. *Id.* "This burden does not require proof beyond a reasonable doubt, but lies somewhere between the proof required in criminal cases and that required in civil cases." *Committee on Prof'l Ethics & Conduct v. Garretson*, 515 N.W.2d 25, 27 (Iowa 1994).

III. Disciplinary Rule 2–106 prohibits lawyers from entering into an agreement for, charging, or collecting an illegal or clearly excessive fee.[1] The rule provides that a fee will be considered excessive "when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." The rule also lists several factors to be considered in determining the reasonableness of a fee, including the time and labor required, the difficulty of the questions involved, the level of skill needed to perform the service, the likelihood that acceptance of the employment will preclude other employment by the lawyer, the amount involved and results obtained, and whether the fee is fixed or contingent.

■ Respondent argues that his actions in filing an application with the industrial commissioner for a partial commutation were not violative of this disciplinary rule. He posits that because he never actually received the amount requested his actions fall outside the rule's prohibitions. We differ with respon-

---

1. The text of the rule is as follows:

DR 2–106. FEES FOR LEGAL SERVICES

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

dent's interpretation of the disciplinary rule, however. We find that respondent "charged" a clearly excessive fee under DR 2–106(A). His actions in seeking the partial commutation fit within the legal definition of charge: "to create a claim against property; to assess; to demand." Black's Law Dictionary 232 (6th ed.1990). Through the petition for partial commutation, respondent assessed a fee of thirty-three percent of the workers' compensation recovery and requested partial commutation in order to obtain that fee. We have previously found that applying to a tribunal for an excessive fee is sufficient to constitute a violation of DR 2–106. *See Committee on Prof'l Ethics & Conduct v. Zimmerman,* 465 N.W.2d 288, 291–92 (Iowa 1991) (lawyer's application to court for excessive and duplicative fees for work on conservatorship found to be violative of DR 2–106(A)).

Respondent also argues that the thirty-three percent contingent fee agreement was not unreasonable when it was signed and therefore should not be considered excessive. We have long recognized that contingent fee contracts are an accepted and enforceable manner of charging and determining attorney fees. *See Wunschel Law Firm, P.C. v. Clabaugh,* 291 N.W.2d 331, 333 (Iowa 1980); *Stoebe v. Kitley,* 249 N.W.2d 667, 669 (Iowa 1977); *Wallace v. Chicago, Milwaukee & St. Paul Ry.,* 112 Iowa 565, 567–68, 84 N.W. 662, 663 (1900). Further, in an ethics case involving a contingent fee, we found that the one-third contingent fee, given the difficult circumstances, was not an unreasonable fee. *Committee on Prof'l Ethics & Conduct v. McCullough,* 468 N.W.2d 458 (Iowa 1991). We also stated:

> Nor do we believe that it is the intent of DR 2–106(B) that contingent fee agreements must be reexamined at the conclusion of successful litigation with respect to the factors applicable to noncontingent fees.

*Id.* at 461.

Our Code of Professional Responsibility states that use of contingent fee contracts is a commonly accepted practice in proceedings to enforce claims. *See* Iowa Code of Professional Responsibility for Lawyers EC 2–22 (1996). One basis for their acceptance that we recognize in EC 2–22 is that a successful prosecution of the claim produces a res out of which the fee can be paid. This rationale does not avail respondent, however, because the recovery on the workers' compensation claim was in no manner due to respondent's work as Jahde's lawyer. Farmland was totally unaware of respondent's representation until after it had investigated the merits of paying workers' compensation and had agreed to pay the claim. Respondent was not entitled to a contingent fee but nevertheless attempted to collect it by applying to the industrial commissioner for a partial commutation of benefits for Jahde. Moreover, he misrepresented or veiled the reasons for asking the industrial commissioner for a partial commutation of benefits. Later, before the grievance commission he promoted a different explanation for his actions, which was not believed by the commission.

While the fee agreement entered into by respondent and Elaine Jahde may have been reasonable at the time of its inception, changes in the attending circumstances by the time the petition for partial commutation was filed rendered the thirty-three percent contingent fee unreasonable and excessive. We note that respondent was granted some fees by the deputy industrial commissioner as hourly compensation, even though none of his work affected at all the decision by Farmland to pay the workers' compensation claim. Prior to June 3, 1994, the point at which he knew of Farmland's acknowledgment of compensability, respondent had spent fewer than fifteen hours working on the Jahde matter. Those fifteen hours were spent not only on the workers' compensation matter, but on probate matters and Jahde's potential tort claims. From that time until Farmland's written admission of liability on July 25, 1994, respondent spent only five more hours on the workers' compensation claim. The only time spent on the workers' compensation claim after July 25 was with regard to preparations for the partial commutation hearing. Those hours should not be considered in a determination of the total hours spent on the workers' compensation matter, because those hours were used solely for the

purpose of obtaining respondent's fee. Thus, respondent spent only twenty hours on the workers' compensation claim, yet sought over $37,000 in attorney fees via the partial commutation petition.

We agree with the conclusion of the grievance commission that respondent's excuses for his action in seeking the partial commutation are neither reasonable nor credible. Respondent alleges that he and Elaine Jahde entered into a separate hourly-based fee agreement for the co-employee liability case and that he intended to use a portion of the sum recovered from the partial commutation to cover those charges. If this allegation were true, however, respondent would have committed other ethical violations: (1) misrepresenting the true reason for the commutation both in pleadings and testimony before the deputy industrial commissioner; and (2) failing to advise Jahde that the initial contingency fee contract was enforceable and that she should seek independent legal counsel before agreeing to a new fee arrangement. *See Committee on Prof'l Ethics & Conduct v. Chipokas,* 493 N.W.2d 414, 417 (Iowa 1992). Given the lack of evidence regarding the alleged oral fee agreement, we find respondent's argument unavailing.

Respondent also alleges that he intended to rebate a substantial portion of the amount recovered through the partial commutation to Elaine Jahde. This allegation also lacks credibility. Respondent did not mention this plan during the proceedings before the deputy industrial commissioner and raised it only when faced with disciplinary sanctions. Furthermore, if this was respondent's intent, he then misrepresented the purpose of the partial commutation proceeding to the deputy industrial commissioner.

We find that the board has demonstrated by a convincing preponderance of the evidence that respondent attempted to collect an excessive fee for his work on Jahde's workers' compensation claim. Specifically, we find the fact that respondent's actions did not prompt Farmland to voluntarily admit compensability and begin payment particularly important to our finding.

IV. Respondent requests leniency in this matter, arguing that mitigating factors exist which make a six-month suspension unwarranted. The alleged mitigating factors include the substantial benefit received by the client, the substantial amount of work performed by respondent, and the fact that Jahde was satisfied with respondent's work. While Jahde did receive workers' compensation benefits, the benefits she received were not the result of respondent's efforts. Farmland acknowledged compensability before it even knew Jahde was represented by counsel. With regard to the amount of time spent by respondent on this matter, we noted above that the total amount of time spent working on the workers' compensation claim was approximately twenty hours. While many more hours were spent working on Jahde's other potential claims, the petition for partial commutation sought fees only for the work done on the workers' compensation claim. Only later, and without notice to the deputy industrial commissioner, did respondent claim that part of the fee sought would apply to work done on the other claims. We find respondent's argument that he performed a substantial amount of work on these matters to be unavailing. Respondent also alleges that because his client was satisfied with his work, there is no cause for discipline. The board has satisfied its burden of proving respondent violated this state's rules of professional conduct for attorneys. The fact that his client may have been satisfied with his work has no bearing on this matter.

The members of the grievance commission heard respondent's proffered reasons for seeking the partial commutation as well as testimony on the alleged mitigating factors firsthand and were unconvinced. Respondent's ethical violation in attempting to collect an excessive fee is compounded by his attempt to mislead the grievance commission and this court with untenable excuses for seeking such a fee. We also note that respondent was previously publicly reprimanded by our court in *Committee on Professional Ethics & Conduct v. Hoffman,* 402 N.W.2d 449 (Iowa 1987). We have repeatedly held, and our rules provide, that prior disciplinary action bears on the decision in a subsequent case involving the same lawyer. *Zimmer-*

*man,* 465 N.W.2d at 293; Iowa Sup.Ct. R. 118.7. We find that a six-month suspension of respondent's license is fully justified under the record before us.

We order respondent's license to practice law in this state suspended indefinitely with no possibility of reinstatement for six months. Upon any application for reinstatement, respondent shall bear the burden of proving that he has not practiced law during the period of suspension and that he has in all respects complied with the requirements of Iowa Supreme Court rules 118.12 and .13. Costs are taxed to the respondent pursuant to Iowa Supreme Court rule 118.22.

**LICENSE SUSPENDED.**