# IN THE SUPREME COURT OF IOWA

No. 19–0519

Filed March 6, 2020

**MUNGER, REINSCHMIDT & DENNE, L.L.P.,**

Appellee,

vs.

**ROSEANNE M. LIENHARD PLANTE** and **CHAD L. PLANTE,**

Appellants.

Appeal from the Iowa District Court for Woodbury County, Nancy L. Whittenburg, Judge.

Defendants seek review of the district court's order granting plaintiff summary judgment. **AFFIRMED.**

Bruce Johnson of Cutler Law Firm, P.C., West Des Moines, for appellants.

Stanley E. Munger of Munger, Reinschmidt & Denne, L.L.P., Sioux City, for appellee.

Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, West Des Moines for amicus curiae Iowa Association for Justice.

**CHRISTENSEN, Chief Justice.**

The only certainty about litigation is uncertainty. Depending on how the litigation unfolds, a contingency fee contract is a gamble for both attorney and client. A contingency fee contract allots to the attorney the risk of much work with little reward and allots to the client the risk of little work with substantial fees. The question presented in this case is whether we will reevaluate the risk of a contingency fee contract from a position of hindsight.

After a severe car accident with a city bus left a motorist in critical condition, the motorist's family sought legal representation. A Sioux City law firm agreed to represent the motorist's interests. Pursuant to this agreement, a contingency fee contract required the motorist to pay one-third of the recovery, if any, to the law firm for attorney fees. Sixteen months later, the city suggested mediating the case. The motorist was offered $7.5 million to settle the case. This offer was accepted.

When the motorist failed to pay the one-third contingency fee, the law firm filed a petition to enforce its payment under the contingency fee contract. The motorist argued the one-third contingency fee was in violation of Iowa Rule of Professional Conduct 32.1.5(a), which prohibits a lawyer from collecting an unreasonable fee. The district court disagreed with the motorist, finding the one third-contingency fee was reasonable at the time of its inception. Judgment was ordered against the motorist for one-third of the recovery plus interest.

The motorist appealed, and we retained the appeal. On our review, we conclude the one-third contingency fee contract was reasonable at the time of its inception. Consistent with our existing caselaw, we will not use the noncontingency fee factors under rule 32:1.5(a) to reevaluate this contingency fee contract from a position of hindsight. This case does not

fall within the narrow exceptions to that general rule. Lastly, the motorist did not preserve error for appeal on whether the interest rate applicable to unpaid fees is reasonable. We affirm the judgment of the district court.

## I. Background Facts and Proceedings.

We view the record in the light most favorable to the Plantes, against whom the district court granted summary judgment. *Phillips v. Covenant Clinic,* 625 N.W.2d 714, 717 (Iowa 2001) (en banc). On November 15, 2016, Chad Plante's vehicle collided with a city bus. The collision left Chad in critical condition. Due to the severity of his injuries, Chad's wife, Rosanne, sought legal representation the day after the collision. Rosanne, a long-time Iowa attorney with twenty years of experience, chose Stanley Munger of the law firm Munger, Reinschmidt & Denne, L.L.P., (MRD). Munger verbally accepted Rosanne's request and immediately began to work the case.

Iowa State Trooper Olesen led the investigation of Chad's accident. Munger, Rosanne, and Trooper Olesen met on December 8 to review Trooper Olesen's technical collision investigation report. According to his report, Chad was traveling southbound through an intersection on Highway 75 when the northbound Sioux City bus failed to yield the right of way while attempting to make a left-hand turn, colliding with Chad's vehicle. The report indicated Chad did not act improperly, although Trooper Olesen determined he was traveling approximately 52–53 mph in a 50 mph zone.

After the December 8 meeting, Rosanne was offered and signed a contingency fee contract with MRD for the "[p]ersonal injury suit against the City of Sioux City." Paragraph 3 detailed the contingency fee terms.

> 3. CONTINGENT FEE. In the event of recovery, Client(s) shall pay Attorney the following fee based on the amount of the recovery: a fee equal to 33 1/3% of the recovery regardless of

whether a case is filed; a fee equal to 40% after notice of appeal and before the case is sent back down for re-trial; a fee equal to 45% if the case is re-tried; and a fee equal to 45% if there is a notice of appeal after the re-trial. *IN THE EVENT NO RECOVERY IS MADE, ATTORNEY SHALL RECEIVE NO FEE FOR SERVICES PERFORMED UNDER THIS CONTRACT.* In the event of a "structured settlement" Attorneys shall receive the above percentage of the present day value of the settlement on the date of the payment of the first installment. In the event the court awards attorney fees, the Attorneys shall recover the greater of: the above percentages applied to the total recovery (which is award plus attorneys fees awarded) <u>or</u> the amount of the court-ordered attorneys fees, whichever is greater. EXPENSES ARE ALL PAID BY CLIENT AND ARE NOT DEDUCTED IN ANY WAY IN FIGURING RECOVERY.

Fees more than thirty days past due were subject to simple interest.

15. INTEREST. Attorney charges simple interest on all past due amounts for fee, expenses and/or advances more than thirty (30) days past due. This is 1% interest per month on all unpaid amounts due, including interest due (12.683% A.P.R.). Client(s) agrees to pay this interest and understands that this paragraph is a vital part of this Attorney Fee Contract.

Prior to filing a suit, Sioux City suggested mediating the case. Mediation took place on May 7, 2018, approximately eighteen months after Chad's accident and the execution of the contingency fee contract. For the purposes of mediation only, Sioux City accepted fault and offered the Plantes $7.5 million on the first day of mediation. The Plantes accepted the offer from Sioux City and a final agreement was subsequently executed.

Munger's representation of the Plantes in the underlying case led to the present suit for attorney fees. MRD filed a petition on September 4, 2018, seeking one-third of the Plantes' recovery in attorney fees and interest owed pursuant to the contingency fee contract. The Plantes counterclaimed, seeking declaratory judgment that the contingency fee contract was unreasonable within the meaning of Iowa Rule of Professional Conduct 32:1.5(a). On March 4, 2019, the district court granted MRD's

motion for summary judgment, finding the contingency fee contract was reasonable at the time of its inception. The district court ordered judgment against the Plantes for $2,179,456.66, together with interest at a rate of 1 % per month or 12 % per annum from October 6, 2018.[1]

The Plantes appealed the district court's grant of summary judgment, and we retained their appeal.

## II. Standard of Review.

A ruling on summary judgment is reviewed for correction of errors at law. *Slaughter v. Des Moines Univ.*, 925 N.W.2d 793, 800 (Iowa 2019). Summary judgment is appropriate when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The moving party has the burden of proof. *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009).

## III. Analysis.

Iowa Rule of Professional Conduct 32:1.5(a) prohibits a lawyer from collecting an "unreasonable fee or an unreasonable amount for expenses." This prohibitive rule lists nonexclusive factors "to be considered" in determining the reasonableness of a fee. Iowa R. Prof'l Conduct 32:1.5(a) & cmt. [1]. Because we presume parties contract in reference to the existing law, *see United Suppliers, Inc. v. Hanson*, 876 N.W.2d 765, 780 (Iowa 2016), the Plantes' primary argument is that their contingency fee contract is "unreasonable" and therefore prohibited by rule 32:1.5(a). The

---

[1]The district court's order was amended on March 7 to render moot the Plantes' counterclaim for declaratory judgment and to assess court costs.

On March 12, MRD filed an unresisted motion to amend the March 7 order, which set the per annum interest at 12.683 %. According to MRD, the contingency fee contract incorrectly stated the annual percentage rate was 12.683 %. For simple interest at 1 % per month, the correct annual percentage rate in the contingency fee contract should have been 12 %. The district court granted the unresisted motion, providing that the interest on unpaid attorney fees be paid at 1 % with an annual percentage rate of 12 %.

Plantes, however, take their argument one step further. They suggest rule 32:1.5(a) and its factors *mandate* a hindsight evaluation of a contingency fee contract for reasonableness. We disagree. The Plantes overlook the risk allotted to both parties by the contingency fee contract. Instead, we conclude the contingency fee contract at issue was reasonable at the time of its inception. Consistent with our existing caselaw, we will not use rule 32:1.5(a)'s noncontingency fee factors to reevaluate this contingency fee contract from a position of hindsight. This case does not fall within the narrow exceptions to that general rule.

This court has long recognized the validity of a contingency fee contract generally. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hoffman*, 572 N.W.2d 904, 908 (Iowa 1997) ("[C]ontingent fee contracts are an accepted and enforceable manner of charging and determining attorney fees."); *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 333 (Iowa 1980) ("We have long recognized the validity of contingent fee contracts generally."); *Stoebe v. Kitley*, 249 N.W.2d 667, 669 (Iowa 1977) ("Ordinarily a contract between attorney and client, providing for the payment of a fee for legal services contingent upon the results obtained by the attorney, without more, is not an illegal contract, but one that is enforceable." (quoting *In re Sylvester's Estate*, 195 Iowa 1329, 1332–33, 192 N.W. 442, 443 (1923)); *Wallace v. Chi., Milwaukee & St. Paul Ry.*, 112 Iowa 565, 567–68, 84 N.W. 662, 663 (1900) (holding a contingency fee contract for "one-half of the amount recovered" was not illegal or void).

A contingency fee contract performs three valuable functions. The Restatement of the Law explains it best.

> First, they enable persons who could not otherwise afford counsel to assert their rights, paying their lawyers only if the assertion succeeds. Second, contingent fees give lawyers an additional incentive to seek their clients' success and to

> encourage only those clients with claims having a substantial likelihood of succeeding. Third, such fees enable a client to share the risk of losing with a lawyer, who is usually better able to assess the risk and to bear it by undertraining similar arrangements in other cases.

Restatement (Third) of the Law Governing Lawyers § 35 cmt. *b*, at 257 (Am. Law Inst. 2000). The amicus brief filed by the Iowa Association for Justice cites further authority supporting the value of a contingency fee contract. *See In re Abrams & Abrams, P.A.,* 605 F.3d 238, 245 (4th Cir. 2010) ("[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation."); *Wells v. Sullivan,* 907 F.2d 367, 371 (2d Cir. 1990) ("Many claimants . . . cannot afford to retain counsel at fixed hourly rates, yet they are willing to pay a portion of any recovery they may receive in return for successful representation." (Citation omitted.)); *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir. 1986) ("The contingent fee uses private incentives rather than careful monitoring [of an attorney's input of time] to align the interests of lawyer and client. The lawyer gains only to the extent his client gains."); *Ga. Dep't of Corrs. v. Couch,* 759 S.E.2d 804, 816 (Ga. 2014) ("Entering such a contract is a gamble for both the lawyer and the client, because the value of the professional services actually rendered by the lawyer may be considerably higher or lower than the agreed-upon amount, depending on how the litigation proceeds."); *see also* 28 U.S.C. § 2678 (2018) (allowing contingency fees for claims against the United States under the Federal Tort Claims Act).

A contingency fee contract allots to the attorney "the risk that the case will require much time and produce no recovery," and it allots to the client "the risk that the case will require little time and produce a substantial fee." Restatement (Third) of the Law Governing Lawyers § 34 cmt. *c,* at 250. "Events within that range of risk, such as a high recovery,

do not make unreasonable a contract that was reasonable when made." *Id.*

There are, of course, exceptions. The Restatement indicates that "large fees unearned by either effort or a significant period of risk are unreasonable." *Id.* § 35 cmt. *c,* at 258. Courts have the ability to "monitor and determine the reasonableness" of a contingency fee contract because of their inherent power to regulate the bar. *Wunschel,* 291 N.W.2d at 334. The authority to determine the reasonableness of a contingency fee contract was implemented in Iowa by the standards promulgated in Iowa Code of Professional Responsibility for Lawyers DR 2–106, *see id.*, and we considered a number of cases under that standard, *see e.g., Comm. on Prof'l Ethics & Conduct v. McCullough,* 468 N.W.2d 458, 460 (Iowa 1991).

In 2005, the Iowa Code of Professional Responsibility for Lawyers was replaced by the Iowa Rules of Professional Conduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 281 n.1 (Iowa 2009) (per curiam). Relevant here, current rule 32:1.5(a) replaced former rule DR 2–106(A) and (B). We have not addressed the reasonableness of a contingency fee contract under the standards of Iowa Rule of Professional Conduct 32:1.5(a) and its factors. The Plantes urge this court to adopt a different analytical approach to current rule 32:1.5(a) than what we used under former rule DR 2–106. We decline to do so.

Former rule DR 2–106(A) prohibited a lawyer from collecting "an illegal or clearly excessive fee." Iowa Code of Prof'l Responsibility for Lawyers DR 2–106(A). The prohibitive rule also provided a list of factors to be considered as guides in determining the reasonableness of a fee.

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Id.* DR 2–106(B). It is significant that the factors listed in former rule DR 2–106(B) remain unchanged and are identical to the factors listed in current rule 32:1.5(a). *Compare id.* (listing eight factors to consider in determining reasonableness), *with* Iowa R. Prof'l Conduct 32:1.5(a) (listing the same eight factors to consider in determining reasonableness). Former rule DR 2–106(B) did not mandate application of all the reasonableness factors to contingency fee contracts in hindsight, and current rule 32:1.5(a) does not change that scheme. In fact, current rule 32:1.5(a)'s comments make it clear that each reasonableness factor may not be "relevant in each instance" and that only "factors that are relevant under the circumstances" are to be considered when determining whether a particular contingency fee is reasonable. Iowa R. Prof'l Conduct 32:1.5(a) cmts. [1], [3].

We also concluded the thrust of the reasonableness standard under current rule 32:1.5(a) remains the same. Although current rule 32:1.5(a) prohibits an "unreasonable fee," former rule DR 2–106(B) prohibited a clearly excessive fee, which was defined as a fee "in excess of a *reasonable*

fee." Iowa Code of Prof'l Responsibility for Lawyers DR 2–106(B). (emphasis added). The reasonableness standard has been followed in this court's DR 2–106 analysis. *See Walker v. Gribble*, 689 N.W.2d 104, 116 (Iowa 2004) ("The purpose of [rule DR 2–106(A)] is to ensure that the client is not charged an excessive fee. If the total fee is *reasonable*, a lawyer may not use such a rule to upend a settlement agreement that later became a bad bargain." (Emphasis added.)); *Hoffman*, 572 N.W.2d at 908 ("[C]hanges in the attending circumstances . . . rendered the thirty-three percent contingent fee *unreasonable* and excessive." (Emphasis added.)); *King v. Armstrong*, 518 N.W.2d 336, 338 (Iowa 1994) (per curiam) ("[T]he district court ruled that the contingency fee agreement was *reasonable* under the facts. We hold that the district court was properly guided by rule . . . DR 2–106(B) . . . ." (Emphasis added.)); *McCullough*, 468 N.W.2d at 461 ("We do not find the one-third contingent fee to be *unreasonable*." (Emphasis added.)); *Wunschel*, 291 N.W.2d at 337 ("[A] contingent fee contract is *unreasonable* when it provides for determination of the fee by factors having no logical relationship to the value of services." (Emphasis added.)).

Two of our cases, *McCullough* and *Hoffman*, provide the best precedential review on how this court has determined whether a contingency fee is reasonable under former rule DR 2–106, and by extension, how we will proceed to determine whether a contingency fee is reasonable under current rule 32:1.5(a). In *McCullough*, the grievance commission found an Iowa lawyer's one-third contingency fee excessive and in violation of DR 2–106(A). 468 N.W.2d at 459–60. We reversed the decision, concluding the "well-recognized reasons" for a contingency fee contract existed at the time of its inception for the "litigation *to be pursued.*" *Id.* (emphasis added). The well-recognized reasons for the

contingency fee were (1) the client had no other practical way to afford the attorney's services, (2) the success in the litigation would produce an object that could pay the fees, and (3) the chances of successful litigation were very uncertain. *Id.* at 461. The commission, "arguing from a position of hindsight," suggested the opposite—that the litigation was simple and chances for success were good. *Id.*

We rejected the commission's approach. *Id.* The lawyer's success in the claim "was far from a sure thing," and we could not find the one-third contingency fee to be unreasonable. *Id.* The *McCullough* court expressly reiterated that the factors under DR 2–106(B) applicable to noncontingent fees could not be used to reexamine the contingency fee contract "at the conclusion of successful litigation." *Id.*

Six years after *McCullough*, we came to a different conclusion in *Hoffman.* It was Hoffman's failure to perform any work relevant to the claim that rendered his one-third contingency fee "unreasonable and excessive" in violation of DR 2–106. *Hoffman*, 572 N.W.2d at 908. The contingency fee contract provided Hoffman with 25 % of the recovery if made without filing a suit, but the contingency fee increased to one-third if Hoffman recovered after filing a suit. *Id.* at 905. Hoffman sent a workers' compensation petition and proof of service to the industrial commissioner after the insurance provider advised him that his client's claim was covered by the workers' compensation policy. *Id.* The insurance provider later submitted a written admission of liability, which it filed with the deputy industrial commissioner. *Id.*

A month after the insurance provider admitted liability, Hoffman and his client filed a petition for partial commutation of the workers' compensation benefits. *Id.* The client stated the partial commutation of $62,446 was needed because "[she] ha[d] agreed to pay attorney fees equal

to 33 % of the total settlement proceeds in this case [and] . . . [did] not otherwise have resources sufficient to pay attorney fees in this case." *Id.* The deputy industrial commissioner determined that because "the workers' compensation recovery was obtained independent from any action taken by [Hoffman], a contingent fee was 'unreasonable and unwarranted.' " *Id.* at 906. It limited Hoffman's recovery only to fees at an hourly rate for the amount attributed to the workers' compensation proceeding prior to the time his client was notified "that benefits were going to be voluntarily provided to her." *Id.* The deputy commissioner sent its commutation decision to the grievance commission, which determined Hoffman attempted to collect an excessive fee in violation of DR 2–106. *Id.* at 907.

On review, the *Hoffman* court again "recognized that contingent fee contracts are an accepted and enforceable manner of charging and determining attorney fees" and acknowledged the one-third contingency fee contract in *McCullough* was not an unreasonable fee. *Id.* at 908. The Plantes zero in on one statement in the *Hoffman* court's analysis to support their position that contingency fee contracts must be evaluated for reasonableness from a position of hindsight under rule 32:1.5(a). After stating DR 2–106 was not intended to require reevaluation of contingency fee contracts at the conclusion of successful litigation, the *Hoffman* court stated,

> While the fee agreement entered into by [Hoffman] and [his client] may have been reasonable at the time of its inception, changes in the attending circumstances by the time the petition for partial commutation was filed rendered the thirty-three percent contingency fee unreasonable and excessive.

*Id.*

We do not read the *Hoffman* court's statement as wholesale endorsement for mandating a reasonableness review in hindsight under every contingency fee contract. The court explained that the recovery of the workers' compensation claim "was in no manner due to [Hoffman's] work as [the client's] lawyer." *Id.* Because "none of his work affected at all the decision by [the insurance provider] to pay the workers' compensation claim," Hoffman could not rely on a successful prosecution of the claim to pay his fee as a basis for the contingency fee's acceptance. *Id.* Although the contingency fee contract was reasonable at the time of its inception, we determined Hoffman's attempt to collect a fee, to which he was not entitled, was excessive and in violation of DR 2–106. *Id.* at 909. The holding specifically noted it was "particularly important" that nothing Hoffman did prompted the insurance provider "to voluntarily admit compensability and begin payment." *Id.* *Hoffman* is a narrow exception to the general rule that we evaluate the reasonableness of a contingency fee contract at the time of its inception.

The Plantes rely on a recent New Jersey superior court case that decided a fee contract was unenforceable under New Jersey's rule 32:1.5(a). *See Balducci v. Cige*, 192 A.3d 1064, 1077 (N.J. Super. Ct. App. Div. 2018). The court in *Balducci*, however, did not throw out the fee contract as unreasonable because of its contingency fee terms. Rather, it was held to be unreasonable because the attorney failed to adequately inform the client about the ramifications of the fee contract. *Id.*[2] The *Balducci* court labeled the fee agreement, which required the client to pay the greater of the attorney's hourly provision, contingent fee provision, or

---

[2]The fee contract provided that the client agreed "to pay the Law Firm for legal services the greater of" an hourly rate, a 37 % contingency, or statutory attorney fees. *Balducci,* 192 A.3d at 1067–68.

the statutory fee provision, "problematic if not misleading." *Id.* at 1075. The court concluded the attorney was ethically obligated to inform his client that the hourly rate-based fee may approach or even exceed the client's recovery. *Id.* at 1078. The *Balducci* court even offered its support in favor of contingency fee contracts: "[T]he attorney must inform the client [that] other competent counsel represent clients in similar cases solely on a contingency basis, without an hourly component, and might also advance costs." *Id.* at 1077–78.

*Clark v. General Motors, LLC*, 161 F. Supp. 3d 752 (W.D. Mo. 2015), is another case the Plantes cite in support of their claim that a contingency fee contract, as applied to the recovery, is unreasonable and in violation of rule 32:1.5(a). But the *Clark* case missteps from the start. Under Missouri's equivalent rule 32:1.5(a), the federal district court embraced a "reasonable in operation" analysis to examine the fee "at the conclusion of the case when the fee is quantified." *Id.* at 759–60. At odds with Iowa's existing caselaw, the court in *Clark* used all eight factors listed under rule 32:1.5(a) to reevaluate the 40 % contingency fee contract in hindsight. *Id.* at 762–67. The Missouri federal district court found the 40 % contingency fee was unreasonable at its inception because it was likely the case could be quickly resolved through a nonadversarial compensation fund established by the defendant "to settle defective ignition switches." *Id.* at 755, 762. In fact, the *Clark* court noted the attorney's risk of loss was reduced so much that the risk profile more closely resembled an ordinary automotive car crash case, "*where a thirty-three percent contingency is typical.*" *Id.* at 762 (emphasis added).

Some states, such as New York, narrowly apply a hindsight review where the contingency fee standing alone and unexplained may show an unfair advantage was taken of the client. *See In re Lawrence*, 23 N.E.3d

965, 978 (N.Y. 2014). Yet, "[a]bsent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written." *Id.* In New York, the power to invalidate contingency fee contracts in hindsight is exercised with great caution because it is not unconscionable for a lawyer to recover more than what could have possibly been earned on an hourly basis. *Id.* Regardless, the Plantes make no claim that an unfair advantage was taken of them.

Our caselaw cautions against the reevaluation of a contingency fee contract from a position of hindsight, which suggests the litigation was simple and the success was easy. *See e.g.*, *McCullough*, 468 N.W.2d at 461. Instead, a contingency fee contract will be evaluated for reasonableness at the time of its inception. Noncontingency fee factors under rule 32:1.5(a) will not be used to reexamine a contingency fee contract at the "conclusion of successful litigation." *See id.* We therefore decline the Plantes' invitation to compare the ratio of hours worked to the results obtained.

A typical one-third contingency fee contract, when the success of litigation to be pursued is very uncertain or far from a sure thing, is presumptively reasonable. *See id.* A contingency fee contract up to 50 % will be reasonable when the chance of success is little and the complexity of the case is great. *King*, 518 N.W.2d at 338 ("The district court noted the complexity of the case, especially the coordination necessary between the district court and the bankruptcy court, and the large size of the class."). But, as demonstrated in *Hoffman*, an attorney may not simply collect a contingency fee where the resulting award is in no manner attributed to his or her work. 572 N.W.2d at 908–09.

We will not, in this case, review the Plantes' one-third contingency contract from a position of hindsight under rule 32:1.5(a). Unlike

*Hoffman*, it is reasonable to assume Munger's appearance as the attorney of record, effort, work, and negotiating skills greatly contributed to Sioux City's settlement offer and the Plantes' ultimate $7.5 million recovery. The district court found Munger is a highly rated attorney and is very knowledgeable regarding personal injury. There is no doubt that Munger's reputation and knowledge played a crucial role in Sioux City's offer. Expert witness testimony indicated Munger's "reputation is that of an experienced, talented and aggressive trial lawyer with a lengthy and varied track record of winning cases." Three other witnesses described Munger's reputation as being "a very tenacious advocate for plaintiffs."

Munger's work on Plantes' case was no different. The day after Chad's accident, Munger hired a private investigator to immediately investigate the case, and Munger himself inspected the scene of the accident and communicated with a driver of the tow truck company. Munger communicated with Sioux City about obtaining videos, photographs, and 911 recordings.

During this time, Munger and his paralegal put forth significant time and effort in negotiating three separate Payment Assistance Agreements between Rosanne and Sioux City, which resulted in substantial presettlement payments to the Plantes. Munger continued to counsel Rosanne, coordinate and prepare a video of Chad's daily life, gather witness statements, and perform legal research. After Sioux City agreed to mediate, Munger performed extensive premediation work, and he ensured all postmediation matters were properly handled following the proposed settlement. Simply put, the Plantes' case does not resemble *Hoffman* where there was a complete lack of work that had no effect on recovery.

The Plantes' case is more akin to *McCullough*. All of the "well-recognized reasons" for a contingency fee contract existed at the time the Plantes and MRD entered into the contract. *McCullough*, 468 N.W.2d at 460. Rosanne, a long-time Iowa attorney with twenty years of experience, admitted that the one-third contingency was reasonable at the time of its inception. It was not until after Sioux City offered to settle the case for $7.5 million—nearly a year and a half after Rosanne signed the contract with MRD—that the Plantes raised concerns with the one-third contingency fee contract. Candidly, the Plantes acknowledged at oral arguments that their position is a one-way street and they do not support a claim for attorney fees above what was provided in the contingency fee contract. We also do not overlook the fact that MRD offered the Plantes three different fee options. The Plantes declined to hire MRD on an hourly fee basis and declined a 35 % contingency fee with MRD advancing expenses. Instead, the Plantes chose to enter into the one-third contingency fee contract and agreed to pay expenses.

MRD's expert witness also testified that the one-third contingency fee contract, together with the 1 % per month interest, is common and routinely approved. Furthermore, at the inception of the contingency fee contract, the chances of the Plantes success in litigation against Sioux City was far from a sure thing. MRD's expert witness testified that Chad's recovery was uncertain; proof of damages was difficult to assess depending on whether he died, recovered, or lived with brain injuries. Sioux City never admitted fault in the matter, and Trooper Olesen's technical collision investigation report calculated that Chad was traveling over the posted speed limit at the time of his accident. In order to prevail, the Plantes were required to establish maximum fault on Sioux City greater than the fault attributed to Chad. *See* Iowa Code § 668.3(1)(*a*) (2016) ("Contributory fault

shall not bar recovery in an action by a claimant to recover damages . . . unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants . . . but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant."). Like in *McCullough*, the Plantes' chances of success were far from certain. *See* 468 N.W.2d at 461.

The Plantes also challenge the reasonableness of the 1 % per month interest rate applied to unpaid fees; however, this issue is not preserved for appellate review. The Plantes did not challenge the reasonableness of the interest rate in their resistance to MRD's summary judgment motion, the district court did not rule on the interest rate issue, and the Plantes did not file a motion requesting the district court rule on the interest rate issue. Moreover, the Plantes provided no resistance to MRD's March 12 motion, which corrected the interest rate applicable to unpaid fees. A fundamental doctrine of appellate review is that issues "be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). In this case, we do not have the benefit of a full record or a lower court ruling on whether the interest rate is reasonable. *See id.* Accordingly, the issue is waived.

## IV. Conclusion.

The one-third contingency fee agreement entered into by the Plantes and MRD was reasonable at the time of its inception. Consistent with our existing caselaw, we will not use the noncontingency fee factors under rule 32:1.5(a) to reevaluate this contingency fee contract from a position of hindsight. This case does not fall within the narrow exceptions to that general rule. The contingency fee contract was a gamble for both MRD and the Plantes. Lastly, the Plantes did not preserve error for appeal on whether the interest rate applicable to unpaid fees is reasonable. For these

reasons, we affirm the district court's judgment stated in its March 4, 2019 order as amended.

**AFFIRMED.**

All justices concur except Wiggins and Oxley, JJ., who take no part.